THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GEORGE W. DONALDSON, Appellant.

Argued October 26, 1945; decided January 25, 1946.

*Philip J. Cirillo* and *John J. Powell* for appellant. I. The District Attorney erred in his theory, presentation and summation. Such confession must be taken as a whole and altogether, in evidence against him only when made voluntarily, and not under pressure of undue influence, exercised through menaces or threats or promises of reward, or immunity from prosecution. Such confession must be taken as a whole and altogether, for it is neither justice nor reason to accept the statements of the defendant as to his connection with the homicide, unless in its entirety and full significance. (Kerr on Law of Homicide,

§§ 433, 498; *People* v. *Williams,* 292 N. Y. 297.) II. The trial court committed errors in its rulings on admission of evidence and in its charge and refusals to charge the jury on defendant's requests. (*People* v. *Odell,* 230 N. Y. 481; *People* v. *Fanning,* 131 N. Y. 659.) III. The trial court erred in the admission of the alleged conversations of the law enforcement officers with defendant under the guise of a confession. (*People* v. *Crossman,* 172 N. Y. S. 567; *People* v. *Brasch,* 193 N. Y. 46; *People* v. *Cuozzo,* 292 N. Y. 85.) IV. The verdict was inconsistent, erroneous and against the weight of evidence. The verdict was a special verdict and not a general one. (Code Crim. Pro., § 436 *et seq.; People* v. *McClure,* 148 N. Y. 95; *People* v. *Dowling,* 84 N. Y. 478; *Guenther* v. *People,* 24 N. Y. 100; *People* v. *Hicks,* 287 N. Y. 165.) V. The conviction and the sentence are without foundation. Under the statutes, premeditation and deliberation are determinative of the degree of the crime and must be proved by sufficient evidence to warrant a conviction of the degree of which they are elements. Something more than mere intention to kill must be shown. (*People* v. *Rosenheimer,* 209 N. Y. 115; *People* v. *Arata,* 254 N. Y. 565; *People* v. *Kane,* 161 N. Y. 380; *People* v. *Albow,* 140 N. Y. 130; *People* v. *Dumar,* 106 N. Y. 502; *People* v. *Kings Co. Iron Foundry,* 209 N. Y. 207; *People* v. *Greenwall,* 115 N. Y. 520; *People* v. *Gonzalez,* 293 N. Y. 259.)

*Earle J. Wiley, District Attorney* (*Joseph B. Mulholland* of counsel), for respondent. I. The evidence was wholly legal and competent. Oral admissions by defendant given freely and voluntarily are admissible as evidence against him even though made to law enforcement officers in the course of their investigation of the crime. The facts related by defendant were corroborated by his acts in uncovering to the authorities the body of his victim and the weapon with which he committed the crime. II. No errors were committed by the trial court either in rulings on admission of evidence or in its charge. The verdict was a general and not a special verdict. (Code Crim. Pro., § 438.) III. The count which charged that the defendant committed the crime of murder in the first degree " wilfully, feloniously and of malice aforethought " charges the crime of murder in the first degree within the provisions of section 1044 of the Penal Law and is consistent with that section. (*People* v. *Nichols,* 230 N. Y.

221; *People* v. *Giblin*, 115 N. Y. 196; *People* v. *Schermerhorn*, 203 N. Y. 57; *People* v. *Sobieskoda*, 235 N. Y. 411; *People* v. *Maine*, 51 App. Div. 142; *Fitzgerrold* v. *People*, 37 N. Y. 413; *People* v. *Conroy*, 97 N. Y. 62.)

DYE, J. The defendant appeals from a conviction by a Rensselaer County jury of murder in the first degree for the killing of one Edward Simpkin by beating him over the head with a piece of iron pipe. The crime was committed on the grounds of the Pawling Sanitarium at the town of Greenbush on or about October 22, 1944.

Both the deceased, Simpkin, and the defendant, Donaldson, were employees of the Pawling Sanitarium and were attached to the maintenance crew, Simpkin as senior painter and the defendant as a member of the crew. The defendant had come to the institution as a parolee of Clinton Prison in July of 1944. During the course of their work friction developed between these two individuals, and on October 19th, following a quarrel over a paint brush which had led to the striking of blows, it was necessary for the superintendent of the institution to admonish the defendant and tell him that he would have to take orders from Simpkin. After that, while Simpkin continued to assign the work, they no longer worked together, but in separate buildings.

Simpkin did not report for work on October 23d, and on October 24th, suspicion was aroused when an employee found a blood-stained overcoat in a wooded area of the sanitarium grounds. This coat was later identified as belonging to Simpkin. The defendant who lived on the grounds in Cottage D, was brought in on October 24th for questioning, which led to his arrest and this indictment.

The indictment consisted of three counts of murder in the first degree: a statutory count, a common-law count and a felony count based on robbery.

The People called the law enforcement officers who testified, over the objection of the defense, as to the voluntary statement made by the defendant in the course of conversation at the interviews held with him immediately after suspicion of guilt attached to him and before his arrest. A written confession by the defendant (and there seems to be no denial that such a confession was made) was not introduced by the District Attor-

ney. In brief, the witnesses testified that the defendant voluntarily stated that on the evening of October 22d, he boarded the sanitarium bus at Pawling Avenue which was being driven by Simpkin, sight of whom recalled a previous argument and he kept getting " madder and madder "; that he returned to his room about seven o'clock and about eight o'clock he left his room and went to the bus garage near the rear of the administration building; that when he saw the bus being driven into the garage, he picked up a piece of iron pipe about eighteen inches long, from a refuse pile behind the boiler house; that when Simpkin came out of the garage he struck him over the head, repeating blow after blow; that he then took the body into the woods, and, upon returning to one of the cottages, namely C, for pick and shovel, he recovered the weapon used and hid it in the rear of an old incinerator; that before burying the body in a shallow grave, two feet in depth, he felt of the pulse and was of the opinion Simpkin " was dead "; that thereafter he checked the ignition key previously removed from Simpkin's overcoat with the car switch and, determining that it was the proper one, left the garage but retained the key; that the pick and shovel were hidden in the cellar of a cottage other than the one from which they had been taken; and that, thereafter, he went to his room to sleep. There is further testimony of the defendant's statements of the taking of certain personal effects from the pockets of the victim's clothing and having secreted them in various places. Such items, identified as being the property of Simpkin, included a bank book, a " Breslaw " book, a social security card, a set of eye-glasses, a change purse, a wallet, a watch and a set of keys; and, after the various places in which they had been secreted were pointed out by the defendant, recovery of all followed.

The series of incidents culminating in the homicide, as related by Donaldson, were fully corroborated by the People's witnesses and, notwithstanding a most searching and painstaking cross-examination, nothing was added indicating that his statement was other than voluntary, that his rights while giving it were in any way jeopardized, that it was not accurately related, or that the facts were otherwise than as stated by him. We are satisfied that the corroborating testimony and circumstances are

more than sufficient to satisfy the well-settled principle requiring corroboration of confessions, and that the admission of the testimony as to defendant's voluntary statement was not reversible error.

At the close of the People's case, on motion of the District Attorney, the third count (the felony count) of the indictment was dismissed for lack of proof, and the jury was instructed to disregard it and to consider only murder by deliberation and premeditation and common-law murder.

The defendant did not take the stand in his own behalf but chose to offer insanity as a defense alleging that at the time of the homicide he was the victim of an epileptic equivalent, during which interlude he had no knowledge of the nature and quality of his act. As evidence of his tendency to suffer an epileptic equivalent, it was shown that his maternal grandfather had committed suicide; that his mother had died in the Hudson River State Hospital at Poughkeepsie; and that the defendant himself had been confined in the Dannemora State Hospital for the criminally insane between October 30, 1918, and November 26, 1919. The testimony of two qualified medical experts was adduced to show the symptoms and the characteristics of an epileptic equivalent, and, in answer to a hypothetical question, they gave, as their opinion, that this defendant was a victim of this unusual psychiatric condition at the time of the commission of the crime. No claim is made that the defendant was otherwise than sane at the time of trial or that he was not able to understand the nature and quality of his acts except during the period of epileptic equivalent. That the defendant was such a victim is sharply denied by the medical experts called by the People, who testified that an examination of the defendant revealed an I. Q. of 78 which indicated a mental age of eleven, and that he was classified as a high grade moron who understood the nature and quality of his act.

The District Attorney in the course of his summation discussed at some length the defense of insanity, saying, among other things:

"What is the defense here? Insanity, I suppose, although they don't call it insanity, because if it was insanity and the defendant was insane on October 22, 1944, he is insane today.

" I think enough of my oath of office and my duty as district attorney not to try an insane man for murder in the first degree or any crime he has committed in this county. It would be absolutely wrong for me, if there were any doubt in my mind about the sanity of this defendant, either at the time he committed the crime, or now, to put him on trial before this court, for his life, or any other thing."

The prejudicial quality, if any, of these remarks was not recognized at the time by either counsel or the court. No objection or exception was taken and no charge was either made or requested and denied in respect of them. This does not preclude consideration of whether such remarks were so prejudicial as to persuade the jury to disregard the defense of insanity, and substitute as an issue the veracity and reputation of the District Attorney. True it is that in the light of a cold and unemotional record the words might better have been left unsaid but, having been said, it is appropriate that we attempt to evaluate the consequences. A broad definition of universal application of what is inflammatory and prejudicial is indeed difficult to formulate. Each trial setting has its own peculiar and individual quality and the impact of counsel's summation upon the jury must be considered in the atmosphere and circumstances of its delivery. To lift a sentence or a paragraph from its context is never satisfactory for the implication accompanying such a practice may indeed be very remote from the clear impression to be derived from a consideration of the whole effect. We are constrained to hold that even though the summation of the District Attorney, under less compelling circumstances, might have been deemed improper, it was nevertheless so insubstantial in this particular instance as not materially to affect the verdict in such a manner as to constitute error warranting a new trial.

The court also charged the jury as to the defense of insanity, the several degrees of homicide as defined in the Penal Law, and instructed the jury fully on their rights in the consideration of lesser degrees. Various requests to charge were made by counsel, in the granting or denial of which we have determined no reversible error was committed. During the course of its deliberations the jury requested the reading of certain portions of the testimony which was allowed and also

asked for instruction as to the penalties of murder in the third degree and manslaughter. The court instructed them that the matter of penalty was solely for the court and that there is no such crime as murder in the third degree. The jury reached its verdict as follows: '' This jury finds the defendant guilty of murder in the first degree, on the second count of the indictment only,'' and when individually polled each juror answered in the same words.

The case now comes down to the propositions of (1) whether the verdict of the jury, '' guilty of murder in the first degree, on the second count of the indictment only '', is consistent with and responsive to the indictment and amounts, in law, to a conviction of murder in the first degree, and (2) whether the verdict is the result of misunderstanding and not a free expression of their judgment.

The claim of the defense that the verdict is inconsistent and not responsive is largely speculation as to what went on in the jury's minds in the course of their deliberations. We, of course, are bound by what appears within the four corners of the record, and from it we are unable to find anything to indicate that the court's charge was erroneous and improper or that the jury were misled and thereby reached an erroneous and unresponsive verdict.

Proceeding to the technical consideration of the first and second counts of the indictment, we are being asked by the defendant to hold that count two (the common-law count) was insufficient to support a verdict of murder in the first degree in that it is silent as to the design to effect the death or the intent to kill and that such an omission is fatal (Penal Law, § 1044); that the verdict of guilty under the second count is a special verdict and cannot be deemed general to the extent of supporting a verdict of murder in the first degree, by reason of such omission. This contention collides with the old and well-established rule that the various statutory changes in the definition of the crime of murder have not abrogated the common-law counts in the indictments for that crime and an indictment in common-law form, stating the facts constituting the crime and charging the crime to have been done by the defendant '' willfully, feloniously and with malice aforethought '', is sufficient to sustain a conviction of murder in the first degree if

the proof as to the manner of the commission of the crime brings it within one of the statutory definitions (*People* v. *Giblin*, 115 N. Y. 196). In *People* v. *Nichols* (230 N. Y. 221) HISCOCK, Ch. J., in discussing the form of the indictment, stated at page 226: " the indictment was sufficient in form when it simply accused defendant of having killed the deceased ' willfully, feloniously and with malice aforethought ' ", citing *People* v. *Giblin* (*supra*) and *People* v. *Schermerhorn* (203 N. Y. 57).

From the whole record it is clear that defendant killed Simpkin with deliberation and premeditation beyond any reasonable doubt and that the jury were justified in finding as their verdict that the defendant was guilty of murder in the first degree.

The judgment of conviction should be affirmed. ·

LEWIS, CONWAY and MEDALIE, JJ., concur with DYE, J.; LOUGHRAN, Ch. J., and DESMOND and THACHER, JJ., dissent in the following memorandum: The District Attorney's pledge to the jury of the absence from his mind of any doubt as to the sanity of the defendant was undoubtedly made in good faith and with a sincere belief in its correctness. Nonetheless for that, however, the defendant was thereby quite effectively deprived of the benefit of any real consideration by the jury of the one issue upon which his life depended. We vote to reverse the judgment of conviction and for the ordering of a new trial (see *Berger* v. *United States*, 295 U. S. 78, 88).

Judgment of conviction affirmed.