Francis T. Murphy, Jr., J.
Defendant, indicted for robbery in the first degree, seeks pretrial discovery and inspection of transcribed statements made by him to law enforcement authorities after his arrest at a time when he was without the assistance of counsel, together with other related items of information.
The defendant’s affidavit avers, in substance, that he was arrested on June 7, 1964 at about 10:00 p.m. ; that he was questioned for approximately three and one-half hours at the 138th Street Precinct by a detective, and an Assistant District Attorney; that by reason of the lateness of the hour and the length of his interrogation he is unable to recall everything he said; that during the interrogation the detective took notes on a sheet of yellow paper; and an employee of the District Attorney recorded stenographically the questions asked by the Assistant District Attorney and the answers made by the defendant; that thereafter he was asked to sign the statement transcribed by the detective during the interrogation; that the statement so made was made without the benefit of counsel and without waiver of his right to counsel. The defendant refused to sign the statement as transcribed by the detective and it is this paper that is the subject of the discovery herein, as well as, the questions and answers recorded stenographically.
The basis of the New York law of pretrial discovery and inspection in a criminal case lies in the visionary pronouncement of Judge Cardozo in People ex rel. Lemon v. Supreme Court (245 N. Y. 24). After recognizing that “ (a)t common law, no right of inspection of documents before trial was conceded to the accused ” (6 Wigmore, Evidence [3rd ed., 1940], p. 475), the court declared (p. 32): “ The supervisory control, whatever it may be, that belongs to courts of common law in respect of a criminal prosecution, is an autochthonous growth, a thing evolving from within * * * The decision of this case does not require us to affirm or deny the existence of an inherent power in courts of criminal jurisdiction to compel the discovery of documents in furtherance of justice. The beginnings or at lease the glimmerings of such a doctrine are to be found.”
During the more than 35 years that have elapsed since People ex rel. Lemon v. Supreme Court (supra) the prophetic wisdom of Judge Cardozo has become a reality. Today, few would deny the discretionary power of the court “ ,to grant a *957 motion for inspection of documents in the possession of the prosecutor ”.
The power per se, however, does not provide the court with a standard to test its proper exercise. Nor does this mean that the application of the court’s inherent power may be determined in a theoretical vacuum. In moulding the law to reflect that “ fundamental fairness essential to the very concept of justice ” (Lisenba v. California, 314 U. S. 219, 236), the United States Supreme Court has enunciated the “ dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime ” (People v. Waterman, 9 N Y 2d 561, 565), quoted with favor in Massiah v. United States (377 U. S. 201, 205). These “imperatives of fundamental justice” (Blackburn v. Alabama, 361 U. S. 199, 211), prescribe standards which no court may transgress and which thus define mandatory constitutional minima to guide the exercise of the court’s inherent power to compel pretrial disclosure of transcribed statements made by a defendant to the police or District Attorney in a criminal case.
It is the opinion of this court that commencing with the now noted pronouncement of Gideon v. Wainwright (372 U. S. 335) the Supreme Court has so defined and clarified the constitutional right to counsel and a fair trial as to compel the pretrial disclosure of this defendant’s transcribed or written statements made at the time of his arrest without the assistance of counsel, as “ essential to a fair trial ”.
Beginning with Gideon v. Wainwright (supra), the Supreme Court has chosen the right of cousel safeguard to serve as the assurance that an accused will be afforded the right to be heard in his defense and the right to a fair trial. The right of counsel has thus been fashioned as the implementing guarantee that the constitutional rights of an accused will be transformed into reality. It is within the context of this underlying theme that the case of Gideon v. Wainwright (supra), and later cases (Massiah v. United States (377 U. S. 201) and Escobedo v. Illinois (378 U. S. 478) fortifying the fundamental right first recognized in Gideon v. Wainwright (supra), must be viewed; for it is through the development of the law as set forth in those cases by our highest court that the matter presently before this court must be determined.
Gideon v. Wainwright (supra, p. 344), demonstrates the “principle of growth in the law” and the Supreme Court’s role in formulating the guiding “ constitutional principles established to achieve a fair system of justice ”. In its now classic pronouncement, the nation’s highest tribunal sublimated *958 the Sixth Amendment right of counsel, to the status of a fundamental right inherent in the concept of due process and as such immune from State abridgement as well as Federal invasion. To so hold, the court was required to expressly overrule the controlling precedent to the contrary (Betts v. Brady, 316 U. S. 455) as “ no longer a reality ” and an “ anachronism ”,
“ The right to be heard”, the court declared, at pages 344 to 345, in adopting the moving words of Mr. Justice Sutherland in Powell v. Alabama (287 U. S. 45, 68-69) “ ‘would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. ’ ”
The court thus recognized that the essence of the right to counsel is the right to be heard in one’s defense and that as a pragmatic courtroom reality, such right to be heard would be meaningless without the aid of counsel. ‘ ‘ With us it is a universal principle of constitutional law, that the prisoner shall be allowed a defense by counsel. ” (1 Cooley, Constitutional Limitations [8th ed.], 700; emphasis supplied.) Moreover, this “ defense by counsel ” necessarily comprehends more than the right to the presence of counsel at the trial. “ [T]he denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution’s requirement that an accused be given the assistance of counsel. The Constitution’s guarantee of assistance of counsel cannot be satisfied by mere formal appointment.” (Avery v. Alabama, 308 U.S. 444, 446.)
Recent Supreme Court decisions have not only reaffirmed the foregoing reasoning, but clearly constitute a caveat that mere formalistic adherence to the basic tenet enunciated in Gideon v. Wainwright (supra) will not be condoned. One of the first decisions after Gideon v. Wainwright (supra) to demonstrate *959 the strong convictions of the Supreme Court with regard to the right of counsel was Massiah v. United States (377 U. S. 201, 206, supra, decided May 18, 1964) in which the Supreme Court held that an accused ‘ ‘ was denied the basic protection of that guarantee [Sixth Arndt., right to counsel] when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel.” (Emphasis added.)
Most significant in tracing the court’s development of the right of counsel as the bulwark of the right of an accused is the court’s declaration (p. 204) that, “ a Constitution which guarantees a defendant the aid of counsel at * * * trial could surely vouchsafe no less to an indicted defendant under interrogation by the police in a completely extrajudicial proceeding. Anything less * * * might deny a defendant ‘ effective representation by counsel at the only stage when legal aid and advice would help him.’ ”
The significance of the Massiah case (supra) was profoundly illustrated by the later decision of the United States Supreme Court in Escobedo v. Illinois (378 U. S. 478). “ The critical question in this case ”, the Supreme Court stated (p. 479): “ is whether, under the circumstances, the refusal by the police to honor petitioner’s request to consult with his lawyer during the course of an interrogation constitutes a denial of ‘ the Assistance of Counsel ’ in violation of the Sixth Amendment to the Constitution as ‘ made obligatory upon the States by the Fourteenth Amendment, ’ Gideon v. Wainwright, 372 U. S. 335, 342, and thereby renders inadmissible in a state criminal trial any incriminating statement elicited by the police during the interrogation.” The critical importance of the court’s affirmative answer to the foregoing question emerges upon realization that the subject interrogation at the police station took place immediately upon the petitioner’s arrest and prior to any formal charge against him. This case, through the convergence of both the Fifth and Sixth Amendments protection, represents a high-water mark for each; for the court, albeit by dicta established as the critical point at which the right to counsel attaches as that moment “when the process shifts from investigatory to accusatory — when its focus is on the accused and its purpose is to elicit a confession ” (p. 492).
Analysis of the explicit holding and of the judicial thrust of Escobedo v. Illinois (supra) is most acutely perceived by study of the court’s reasons for the extension of the protection *960 afforded by the right of counsel in order to meet the practical obstacles to the accused’s right to a fair trial. “ [The] ‘ right to use counsel at the formal trial the court stated, “ ‘ [would be] a very hollow thing [if], for all practical purposes, the conviction is already assured by pretrial examination ’ * * * ‘ One can imagine a cynical prosecutor saying: “ Let them have the most illustrious counsel, now. They can’t escape the noose. There is nothing that counsel can do for them at trial ” ’ ” (pp. 487-488). Thus the constitutional right to counsel to be meaningful, had to be defined within the context of its constitutionally-mandated purpose — the guarantee to the accused of his right to a fair trial.
The critical question posed for our present consideration is whether, within the content of the Gideon-Massiah-Escobedo doctrine, pretrial disclosure of defendant’s statements made without the aid of counsel as transcribed by the law enforcement authorities is essential to a fair trial.
In 1957, the highest tribunal was presented with this very problem. That case, Cicenia v. Lagay (357 U. S. 504) raised two due process issues, the admissibility of a postaddress confession obtained under circumstances virtually identical to the Escobedo case (supra) and the denial by the Judge to permit pretrial disclosure of the accused’s confession. The court, in a 5 to 3 decision (Chief Justice Warrex, Mr. Justice Douglas and Mr. Justice Black dissenting, and Mr. Justice Brexxax taking no part in the consideration of the case), held that although compliance by the prosecution with a request for inspection constituted the better practice, petitioner’s conviction after a plea of non vult did not violate the Due Process Clause of the Fourteenth Amendment. Of crucial significance to the matter now before this court, the Supreme Court in the Escobedo case (supra, p. 492) expressly stated that “to the extent that Gicenia * * * may be inconsistent with the principles announced today, [it is] not to be regarded as controlling ”.
It would thus appear that defendant is entitled, at the very least, to have his attorney examine the transcribed statements elicited as the result of a secret interrogation during a period when the constitutionally protected right of counsel had attached, to assure him of a fair trial.
Indeed, Mr. Justice Brennan has recently enunciated the view that pretrial disclosure is comprehended by the right of counsel. To deny pretrial disclosure of defendant’s statements is “ [t]o shackle counsel so that he cannot effectively seek out the truth and afford the accused the representation which is not his *961 privilege but his absolute right ’ ’ (Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth? 1963 Wash. U. L. Q. 279, 287).
With the principle above stated, the court is in accord.
We must be mindful of the practical effect of the introduction of incriminating statements at a trial. Such statements ‘1 frequently [become] the core of the State’s case. It is not uncommon for the judicial proceeding to become more of a review of what transpired at headquarters than a trial of the basic criminal event itself. * * e When a confession is given and issues surrounding it tend to displace the criminal event as the focus of the trial, there should be [an] opportunity to get at the facts of the substituted issue. Simple justice requires that a defendant he permitted to prepare to meet what thus looms as the critical element of the case against him.” (State v. Johnson, 28 N. J. 133, 137; emphasis added.)
Decisional precedents in this and other jurisdictions indicate that there is a growing awareness of the “ elemental justice in permitting one accused of crime to see a confession alleged to have been made by him, which he expects to be produced against him at his trial.” (State v. Haas, 188 Md. 63, 76.) The judiciary has given pragmatic effect to one of our basic tenets, that “ the interest of the [State] in a criminal prosecution ‘ * * * is not that it shall win a case, but that justice shall be done’ ” (Jencks v. United States, 353 U. S. 657, 668).
Recognition of justice as the State’s paramount goal inexorably necessitates the subordination of the now stereotype objections to pretrial disclosure. Quite aside, however, from this relegation to a position of lesser weight, those arguments in favor of the denial of disclosure have been exposed by countless Judges and legal writers as but “vagrant fears”. (See State v. Johnson, 28 N. J. 133, and cases cited therein; People v. D’Andrea, 20 Misc 2d 1070 and cases cited therein; Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth, supra; Traynor, Ground Lost and Pound in Criminal Discovery, 39 N. Y. U. L. Rev. 228 [1964].)
Shorn of its emotional bases — the very same arguments advanced for “ one-time refusal of the criminal law * * * to allow the accused to produce any witnesses at all” (6 Wigmore, Evidence [3d ed., 1940], § 1863, p. 488), “ no disclosure ” emerges as the embodiment of the extreme adversary theory of justice. Carried to its logical conclusion, the “ sporting game ” view results in actions, not unlike those of the prosecutor’s office in the matter now under consideration.
*962 In refusing to respond to a request from this court for information as to whether the defendant was interrogated by the District Attorney’s office, or if the statement sought is actually in existence, the District Attorney’s office wrote: “ the People submit that your honor will agree that the information being sought would be inconsistent with the proper administration of justice in this case during the pre-trial stages of this proceeding, and accordingly we trust that you will not require us to make the divulgence suggested by your honor.”
It is apparent from the foregoing that the People do not deny the existence of the transcribed statement nor do they deny the making of the statement and the transcription of the same under the circumstances as alleged in the defendant’s affidavit on file herein, which stands uncontroverted as to the facts therein stated.
The letter of the District Attorney, a portion of which was quoted above, is in sharp contrast with the following excerpt from the brief amicus curim of the Attorney General ,of the State of Pennsylvania. ' ‘ It is submitted that the more liberal use of discovery in criminal cases is not only being practiced by the courts but also by the district attorneys of metropolitan communities * * * and this practice greatly aids in the administration of justice * * *. Under the present system in civilized communities where counsel is informed of the real strength of the Commonwealth’s case, he is better enabled to give the proper advice to his client and trials are shortened, issues are met more fairly, guilty pleas are very often made, particularly in homicide cases, and the administration of justice is not only speeded up but made more fair and exact.” (Brief for the Attorney General, pp. 11-12, in Di Joseph Petition, 394 Pa. 19, quoted with favor in Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth? supra, p. 283, n. 10.)
Mr. Justice Sobel has similarly stated, in People v. D'Andrea (supra, p. 1073): “ I conclude based upon experience with many cases where there has been voluntary pretrial disclosure by the prosecution, that the danger of perjury is grossly exaggerated. And contra, the potential for good in aiding disposition, in facilitating and expediting trial and in preventing injustice has been gravely underestimated ”.
This court has had similar experience (People v. Milan, N. Y. L. J., Aug. 24, 1964, p. 8, col. 8) wherein after the granting of a pretrial discovery of defendant’s statement, a disposition was had.
*963 Certainly defense counsel, after being apprised of a defendant’s statements made without the assistance of counsel, is in a far better position to make a defense or to recommend a plea. This approach, it would seem, falls squarely within the dictates of a fair trial, as enunciated by our highest tribunal in its constitutional interpretation. With respect to the age-old argument that such disclosure will result in the pattern defense or perjury; it is to be noted 6 ‘ that to assume a defendant will commit perjury strips him to that extent of the presumption of innocence, overlooks the effect of cross-examination if in fact the statement was given voluntarily and disregards the sanctions for perjury” (United States v. Fancher, 195 F. Supp. 448, 454).
The court, in reaching the determination herein, is mindful of the statement made by Mr. Justice Fuld in People v. Stanley (15 N Y 2d 30, 32) recently decided by our Court of Appeals: “We limit ourselves, therefore, to a consideration of that argument, to the applicability of those decisions to the present situation, and refrain from considering or passing upon the more difficult and far-reaching problem whether a person talcen into custody for questiomng prior to his arraignment or indictment is entitled to be made aware of his privilege to remain silent and of his right to a lawyer if he desires one. (Cf. Escobedo v. Illinois, 378 U. S. 478; People v. Dorado, 62 Cal. 2d 350, 394 P. 2d 952.) ” (Emphasis added.) While that case deals with exclusionary rules of evidence and this with pretrial discovery, the court believes that the problem has many common characteristics.
It would appear that the position of the District Attorney, as reflected by the quotation from his letter mentioned above, does not follow the' more liberal trend in the administration of justice in criminal cases.
Judge Tbaystor of the California Supreme Court, in an article entitled “Ground Lost and Found in Criminal Discovery” (39 N. Y. U. L. Rev. 228, 244) states: “ [D]iscovery is available not merely in the discretion of the trial court, but as a matter of right. Thus, defendants are entitled to pretrial discovery of * * * statements to the police by defendants or witnesses, whether or not the statements are signed or acknowledged. *° * * He need not show that the material sought will be admissible into evidence; he need show only that it may aid him in the ascertainment of the facts.”
It further appears that the discovery sought herein relating to a defendant’s transcribed statements is now granted in *964 the States of Maryland, Illinois, Texas, California, Arizona and Arkansas, among others. Based upon the decisions of the Supreme Court of the United States and the observations of my learned colleagues, some of whom have been quoted herein, it is the opinion of this court that the time has once again come for this State to serve as precursor of the rights of the accused by granting to defense counsel pretrial disclosure of the State’s transcribed ex parte examination of the defendant as a matter of constitutional right; absent, of course, a claim of Glovernment privilege, in which instance, if judicially sustained, the prosecutor will be precluded from using the statements at defendant’s trial (Jencks v. United States, supra).
Accordingly, the transcribed statements made by the defendant to the police or District Attorney at the time of his arrest, without the assistance of counsel and without waiver of his right to counsel, are directed to be disclosed at this time by the District Attorney to defense counsel as a matter of right to properly enable the said defendant to prepare a defense in accordance with the dictates of a fair trial.
That branch of defendant’s motion which seeks discovery and inspection of the information, indictment and the record of all proceedings against Adam Bice, originally charged with the subject crime and the information, indictment and the record of the proceedings against Shabid El Hussein Muhammad, also known as Maynard Prater, the alleged co-conspirator — the crime charged, is disposed of by referring counsel to the public records of this court. To the extent that the records of the proceedings have not been transcribed by the stenographers, such transcription is ordered to be undertaken forthwith. The remainder of the relief requested in defendant’s motion is denied as stereotyped, vague and ambiguous.