UNITED STATES of America ex rel. James ROYSTER, Petitioner,

v.

Daniel McMANN, Warden of Auburn State Prison, Auburn, New York, Respondent.

No. 68 C 552.

United States District Court
E. D. New York.

Oct. 7, 1968.

larceny and third degree burglary in County Court, Nassau County, on March 31, 1966. Sentenced to consecutive terms of from five to ten years imprisonment, his conviction was affirmed by the Appellate Division, Second Department (27 A.D.2d 801, 279 N.Y.S.2d 343 (1st Dep't 1967)), and leave to appeal to the Court of Appeals was denied.

■ A writ of habeas corpus is now sought on the ground that petitioner was deprived of due process of law by the failure of the trial judge to hold a pre-trial hearing to determine whether an oral statement he made to the police and introduced at his trial was voluntarily made. See Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The petition is denied. Petitioner has failed to establish that he is constitutionally entitled to a separate evidentiary hearing on the issue of voluntariness.

As revealed by the uncontradicted testimony at petitioner's trial, the events leading up to the making of the statement in question were as follows: On the evening of April 17, 1965, Patrolman Donald Hawkinson investigated the burglary of a private home. The suspected perpetrators were described to him as being three male Negroes driving a pink and white Pontiac. Among the items reported missing was a television set with a special earphone jack installed in the rear.

Later that evening, while he and a fellow officer were cruising in the area of the burglary, Hawkinson spotted a pink and white Pontiac parked at the curb. It was occupied by three male Negroes. As Hawkinson pulled up behind the car, he saw petitioner get out carrying a television set. Hawkinson immediately walked over and asked where he had gotten the set. Petitioner replied that "his wife and he were splitting up * * * and this was his part of the property."

At the trial the victim of the burglary identified the television set as the one that had been stolen. Petitioner's wife

---

James J. McDonough, Atty. in Charge, Legal Aid Society of Nassau County, N. Y., Crim. Div., Mineola, N. Y., for defendant, Harry Peltz, Jr., Mineola, N.Y., of counsel.

Louis J. Lefkowitz, Atty. Gen. of State of New York, New York City, for respondent, Michael Colodner, New York City, of counsel.

## MEMORANDUM

WEINSTEIN, District Judge.

Petitioner, James Royster, was found guilty by a jury of first degree grand

testified on cross-examination that she and petitioner were not separating or splitting up their property and that they had never owned the set in question.

The prosecutor, as required by the New York Court of Appeals' decision in People v. Huntley, 15 N.Y.2d 72, 78, 255 N.Y.S.2d 838, 843–844, 204 N.E.2d 179 (1965), and section 813–f of the New York Code of Criminal Procedure, notified petitioner's attorney of his intention to introduce testimony about the statement. At the start of and during the trial, without making any suggestion of coercion, petitioner's attorney requested a Huntley hearing to determine whether the statement was voluntary. The trial judge denied the request on the ground that a Huntley hearing is not required where the statement is exculpatory.

■ This distinction between inculpatory and exculpatory statements is dubious. An exculpatory statement may be coerced. Proved false, it shows a guilty state of mind and thus has the same evidentiary effect as an admission. It should be treated procedurally in the same way as any admission or confession. Cf. Miranda v. State of Arizona, 384 U.S. 436, 477, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement were in fact truly exculpatory it would, of course, never be used by the prosecution"); People v. Schwartz, 30 A.D.2d. 385, 292 N.Y.S.2d 518 (2d Dep't 1968); Note, Tacit Criminal Admissions in Light of the Expanding Privilege vs. Self-Incrimination, 52 Corn.L.Q. 335 (1967). Wigmore's suggestion to the contrary is a reflection of his distaste for rules excluding relevant evidence and is not supported by current doctrine. III Wigmore on Evidence, § 821, pp. 240–242 (3d ed. 1940).

■ Whether the statement was inculpatory or exculpatory, petitioner must still show that he was entitled to a hearing as a matter of constitutional right on the issue of voluntariness. Just as a jury need not be instructed to consider the question of voluntariness unless there is some evidence raising the issue, under Jackson v. Denno a hearing need not be held in every case in which the prosecution seeks to make use of a confession or admission. Rather, an independent hearing is called for only when the "essential facts" are in dispute. Due process "requires that there first must be a reliable determination of any *disputed* facts regarding the voluntariness of a statement by the accused." United States v. Feinberg, 383 F.2d 60, 70 (2d Cir.1967), cert. denied, 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968) (emphasis added). See also Williams v. Anderson, 362 F.2d 1011, 1012 (3d Cir.) (per curiam), cert. denied, 385 U.S. 988, 87 S.Ct. 601, 17 L.Ed.2d 449 (1966) ("undisputed facts make it very clear that there was no issue in this trial with respect to the voluntariness of the confession"); Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763, 766 (1965) ("factual bases of a voluntariness objection are always to be first explored out of the presence of the jury * * * unless it is clear that the objection is wholly frivolous"); cf. Tooisgah v. United States, 137 F.2d 713, 716 (10th Cir. 1943); Gibson v. Boles, 288 F.Supp. 472, 476, n. 5 (N.D.W.Va. 1968). The Fourth Circuit rule requiring a hearing in every case is based on the supervisory power over federal trials, not on the Constitution. Mullins v. United States, 382 F.2d 258, 261–262 (4th Cir. 1967).

■ An analogy is provided by the procedure followed in search and seizure cases. The prosecution need not, as a matter of course, prove that every piece of evidence that it seeks to introduce was obtained lawfully. It is only after the defendant has first raised the issue and pointed to some basis for believing that the government may have engaged in unlawful conduct that the government must bear the heavy burden of proof on the issue of whether its evidence was obtained as a result of such conduct. See, e. g., United States v. Schipani, 289 F. Supp. 43, 54 (E.D.N.Y.1968); Maguire, Evidence of Guilt 221 (1959).

Due process does not require the interruption of a trial for a pointless hearing. Cf. Lawn v. United States, 355 U.S. 339, 348–350, 78 S.Ct. 311, 2 L.Ed. 2d 321 (1958); Maguire, Evidence of Guilt 222 (1959). The courts are already overburdened. The fact that suppression hearings have become, in effect, a method of taking depositions in criminal cases is an incidental benefit to the defendant, not an independent reason for granting the hearing. Cf. Sciortino v. Zampano, 385 F.2d 132 (2d Cir.1967); United States ex rel. Wheeler v. Flood, 269 F.Supp. 194 (E.D.N.Y.1967); United States v. Arcuri, 282 F.Supp. 347 (E.D.N.Y.), aff'd, 405 F.2d 691 (2d Cir. 1968).

The soundness of the rule that pro forma suppression hearings are not mandated is amply demonstrated by the instant case. Since it was tried before *Miranda*, the issue for determination would be whether petitioner's statement had been obtained by physical or mental coercion. There is not the slightest hint of coercion in this record. The testimony of Hawkinson and the other witnesses at the trial gives no indication that the issue is in the case. Petitioner's counsel at the trial, in asking for a hearing, made only a pro forma request and did not suggest any line of inquiry that might suggest coercion. On oral argument on this application, petitioner's counsel could not state what possible evidence of coercion could be produced now. "[N]o harm resulted to * * * [petitioner] by reason of the trial judge's failure to hold a preliminary hearing or to make specific findings as to voluntariness." United States v. Feinberg, 383 F.2d 60, 70 (2d Cir.1967), cert. denied, 389 U.S. 1044, 88 S.Ct. 788, 19 L. Ed.2d 836 (1968).

The lack of basis for the application is conclusively shown by the Huntley hearing held in another case involving petitioner. Among the contents of petitioner's car were the proceeds of another burglary. At the post-*Miranda* trial for this second burglary, the prosecution sought to introduce the same statement about petitioner's breaking up with his wife and dividing the property. A hearing was held. Petitioner did not take the stand. Testimony at this hearing was identical to that given earlier at petitioner's trial. While the trial judge ruled that the statement was inadmissible, he did so on the ground that the *Miranda* warnings had not been given; he made no finding of coercion.

Neither the doctrine of res judicata nor of collateral estoppel applies to such a related hearing. Nevertheless, in accordance with the general doctrine of conservation of judicial energy, its outcome may be considered by the Court to confirm the conclusion that another hearing would be fruitless. Cf. Wong Doo v. United States, 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924); 28 U.S. C. § 2244(a); Moore, Commentary on the U.S. Judicial Code 437–38 (1949).

The petition for a writ of habeas corpus is denied.