Richard C. Delist, J.
The defendant, Richard Utley, through his attorney, moves this court for the following relief:
(A) That the court inspect and examine the stenographic minutes of the Grand Jury proceeding which resulted in the instant indictment, for the purpose of determining, under CPL 210.30 whether the evidence before the Grand Jury was legally sufficient to support the indictment, and each count thereof;
(B) That the court dismiss the indictment and each count thereof, under CPL 210.20 (subd. 1, par. [b]), in that the evidence before the Grand Jury was not legally sufficient to establish any of the offenses charged;
(C) That the District Attorney be directed to file a bill of particulars, pursuant to CPL 200.90, supplying the following items of information:
1. the exact dates and times of the occurrence of the offenses listed in the indictment;
2. the exact. location and description of the places wherein the crimes alleged in the indictment occurred;
3. the exact amounts of money allegedly stolen;
4. the exact description of any weapons displayed by the defendant;
5. the manner in which the defendant allegedly used a weapon to injure the victim; and,
6. a description of acts committed by codefendants.
(D) That the court issue an order -of discovery as to any oral or written statements made by the defendant;
(E) That the court direct pretrial hearings pursuant to article 710 of the CPL to determine the illegality or taint' of any evidence to be used against the defendant at trial;
(F) That the court release the defendant in his own recognizance under CPL 630.40; and,
(G) That the court grant such other and further relief as to the court seems just and proper.
I. AS TO INSPECTION AND DISMISSAL
An indictment is presumptively based on legal and sufficient evidence, and this presumption continues until there is satis *88 factory proof, to the contrary (People v. Sexton, 187 N. Y. 495; People v. Howell, 3 N Y 2d 672; People v. Bergerson, 17 N Y 2d 398). This presumption is generally overcome only by sworn allegations of fact set forth in moving papers. Surmise, conjecture or speculation does not give rise to “ reasonable cause to believe the Grand Jury evidence may not have been legally sufficient,” and does not warrant the granting of a motion to inspect the minutes (CPL 210.30, subds. 2, 3; People v. Banks, 27 Misc 2d 557; People v. Harrington, 9 Misc 2d 216; People v. Glen, 173 N. Y. 395).
The defendant attempts to supply the necessary reasonable cause by stating that M [he] does not believe that the evidence presented to the Grand Jury was legally sufficient * * * [and] there was no testimony presented to the Grand Jury identifying * * * [him] as the perpetrator of the alleged crimes ”. The defendant’s papers do not meet the burden of CPL 210.30 (subd. 2). The court, therefore, is not mandated to grant the motion to inspect the Grand Jury minutes (CPL 210.30, subd. 3).
The court has the discretion under CPL 210.30 (subd. 4) to grant the motion to inspect, notwithstanding the lack of reasonable cause to believe that the evidence before the Grand'Jury was insufficient. In this case, however, the court records indicate that the defendant was arrested almost immediately after the. alleged crimes, and the defendant, in his moving papers, states that he gave oral and written confessions to the police. Congested calendars no longer permit exercises in futility. The court declines to exercise Its discretion under this section.
The motions to inspect and to dismiss are denied.
II. as to the bill of particulars
The purpose of a bill of particulars is to clarify the indictment and to enable the defendant to adequately prepare or conduct his defense (Practice Commentary to CPL 200.90 by Richard G. Denser).
The court grants the defendant’s motion to the extent that the answering affidavit of the District Attorney is deemed a bill of particulars.
As to those items of information not ¡supplied by the District Attorney, the motion is denied, since the information requested is either evidentiary in nature (CPL 200.90, subd. 3), or is not found to' be necessary to the defense (People v. Ricci, 59 Misc 2d 259; Matter of Edgar L., 66 Misc 2d 142). The defendant is granted leave to renew the motion upon a proper showing that *89 the information requested is necessary, not merely useful, to his defense.
in. AS TO DISCOVERT
(A) WRITTEN STATEMENTS
The defendant has a statutory right to discovery of any written or recorded statement made by him to law enforcement personnel, or to persons acting under their direction or in co-operation with them (CPL 240.20, subd. 1, par. [b]). This was established law in New York prior to the enactment of the Criminal Procedure Law (People v. Remaley, 26 N Y 2d 427; People v. Bach, 33 A D 2d 560; People v. Quarles, 44 Misc 2d 955; People v. Chirico, 61 Misc 2d 157).
These statements are discoverable whether or not the prosecutor intends to use them at trial, as the statute and case law do not differentiate between inculpatory and exculpatory statements.
The manner in which the defendant’s oral statements have been written or recorded is immaterial. If they are summarized, abridged, referred to, or reflected in any book, record or paper in the possession of law enforcement personnel, they are subject to discovery. (People v. McMahon, 72 Misc 2d 1097; People v. Zacchi, 69 Misc 2d 785; People v. Bennett, 75 Misc 2d 1040, 1051; CPL 240.10, subds. 1, 2; CPL 240.20, subd. 1, par. [b]; People v. Powell, 49 Misc 2d 624.) In the event that such a recording is contained in exempt or privileged property, that part of such property not affected by this order may be excised or redacted prior to the defendant’s inspection of same (CPL 240.10, subd. 3; People v. Bennett, supra, pp. 1051-1052).
The District Attorney is directed to permit the defendant’s attorney to inspect and to copy or photograph such statements within 30 days of the entry of this order.
(B) ORAL STATEMENTS
Is the defendant entitled to the particulars of his oral statements, not recorded or written, ¡but which are within the knowledge of law enforcement authorities and may well be used against him at trial?
In People v. Quarles (44 Misc 2d 955), the court was asked to compel pretrial disclosure of all notes and stenographic minutes of defendant’s statements to the police and an Assistant District Attorney. The request was made approximately seven years before the existence of a statutory right to such material. The learned Judge, after a consideration of Gideon v. Wainwright (372 U. S. 335), Massiah v. United States (377 U. S. 201) and *90 Escobedo v. Illinois (378 U. S. 478) determined (p. 957) that the “ Supreme Court has so defined and clarified the constitutional right to counsel and a fair trial as to compel the pretrial disclosure of this defendant’s transcribed or written statements made at the time of his arrest without the assistance of counsel, as ‘ essential to a fair trial
In reaching its conclusion, the Quarles court noted that incriminating statements very often are the core of the People’s case and that, in most cases, criminal trials are reviews of that which transpired at the police station, rather than a trial of the basic criminal act itself. The court, quoting eminent jurists, says (pp. 960-961): “ To deny pretrial disclosure of defendant’s statements is ‘ [t]o shackle counsel so that he cannot effectively, seek out the truth and afford the accused the representation which is not his privilege but his absolute right ’ * * * ‘ Simple justice requires that a defendant be permitted to prepare to meet what thus looms as the critical element of the case against him.”’
In the Chirico case (supra) the defendant requested an order directing the District Attorney to produce a written statement made by him to the police while he was not represented by counsel.
The District Attorney opposed the granting of the order for each of two reasons:
1. there was no statutory right to such relief; and
•2. the defendant was entitled to view his confession only at the Huntley hearing, which he can demand under section 813-g of the Code of Criminal Procedure; but this demand can be made only after receiving the section 813-f of the Code of Criminal Procedure (now CPL 710.30) notice that the People intend to offer it at trial; where the People decline to serve that notice, as in this case, the defendant has no right to see his confession.
The court granted the relief requested for the following reasons:
1. It accepted that Quarles rationale that due process and the right to be represented by counsel are denied if counsel is uninformed about such a substantial matter, and, thus, unable to make reasoned and intelligent decisions. The court, noting the impact of Supreme Court decisions and the law of discovery in other States, concludes that, “ to deny defendant[’s] counsel the right to examine a copy of the statement or confession * * * is to deny defendant and his counsel the right to evaluate the case and to prepare a defense.” (People v. Chirico, 61 Misc 2d 157,161.)
*91 2. The court reviewed People v. Rosario (9 N Y 2d 286) and People v. Malinsky (15 N Y 2d 86) which allowed defense attorneys access to prior statements by People’s witnesses, and found the reasoning and philosophy of the Court of Appeals in those cases to be anachronistic, inconsistent, and illogical to a holding that a defense attorney could not obtain a copy of his client’s statements, especially those made at the time of arrest in the absence of counsel.
3. The court noted that the failure to serve the section 813-f of the Code of Criminal Procedure notice did not preclude the District Attorney from using defendant’s statements to impeach his credibility, should he take the stand. The possible use of alleged confessions or admissions, without first testing their voluntariness pursuant to the constitutional compulsion of Jackson v. Denno (378 U. S. 368) and the procedure mandated by People v. Huntley (15 N Y 2d 72), together with denial of discovery of such statements, withholds from the defense attorney sufficient information upon which to make the elemental decision of allowing his client to testify in his own defense.
4. The court reasoned that the People may seek to introduce physical evidence which ostensibly is competent and material, but which in reality must be excluded under the ‘ ‘ fruit of the poisoned tree” doctrine, the “tree” here being involuntary statements made by the defendant. In such a case, the prosecutor will not serve the section 813-f of the Code of Criminal Procedure notice. If the defendant has no recollection of those words, discovery would be the only vehicle available to bring this to the defense counsel’s attention.
In the Bach case (People v. Bach, 33 A D 2d 560), the Appellate Division, Second Department, subscribed to the Quarles reasoning and stated that a defendant upon demand was entitled as a matter of right to obtain a copy of any confessions or statements made by him in order to insure a fair Huntley hearing and/or a fair trial.
The Court of Appeals in People v. Remaley (26 NY 2d 427) held that a defendant is entitled as a matter of right to preHuntley and pretrial examination of any confessions or statements made by him to law enforcement personnel in order to intelligently prepare his defense, even if the accused admits that these were made voluntarily. The Bemaley doctrine has been held applicable even if a Huntley hearing is not sought (People v. Blair, 64 Misc 2d 519).
In People v. McMahon (72 Misc 2d 1097) the court, without opinion, ruled that the accused was entitled to oral statements made to law enforcement personnel.
*92 What is the legal meaning and relevance of the terms “ confessions ” or “statements” which appear in Bach and Remaleyl
An accused, for our purposes, can make three types , of oral or written statements which, experience demonstrates, can be used against him at trial. These are confessions, admissions, and exculpatory statements. It would be wise at this juncture to more exactly define and describe those terms.
A confession is a voluntary, express acknowledgment by the accused that he engaged in conduct which constitutes the crime charged, or an essential part of it. (People v. Hennessey, 15 Wend. 147; People v. Bretagna, 298 N. Y. 323; 3 Wigmore, Evidence [Chadbourn Rev., 1970], § 821.) An admission is a voluntary acknowledgment by the accused of a certain fact which raises the inference of, and tends to prove, guilt,, only when considered with other proven facts. A properly proved and corroborated confession is sufficient for conviction; an admission is merely circumstantial evidence and needs other proof. A confession is direct evidence of guilt, while an admission merely tends toward establishing it. Both are different from an exculpatory statement, with which the accused attempts to show that he did not or could not have committed the crime. (People v. Domenico, 204 App. Div. 754; Richardson, Evidence [10th ed., 1973], § 540; 2 Underhill’s Criminal Evidence [5th ed., 1957], § 385; 3 Wharton’s Criminal Evidence [13th ed., 1973], § 663-664; People v. Bretagna, supra.)
Confessions, as well as admissions, can be written (People v. Viola, 264 App. Div. 38; People v. Chapleau, 121 N. Y. 266), and, if written, they can be evidence even if unsigned by the accused (People v. Whalen, 249 App. Div. 890; People v. Black, 18 A D 2d 719), or they can be oral (People v. Donaldson, 295 N. Y. 158; People v. Giro, 197 N. Y. 152; Wong Sun v. United States, 371 U. S. 471). Indeed, they can be both written and oral: “ all that the accused voluntarily wrote, or said, or signed, which is material to the charge, is competent against him, because it is his own admission and against Ms own interest.” (People v. Giro, 197 N. Y. 152, 160.)
To illustrate, a confession would be, “I killed my wife with my gun,” while an admission would be “ that gun is mine and never leaves my possession ” (where the prosecutor proves that the gun in question was the murder weapon). An example of an exculpatory statement is where the accused tells the police that he was at the Bijou when his wife was killed, and the police know that the Bijou was burned to the ground the night before the murder.
*93 One can readily see that any one of the three types of statements can be most damaging to the defense in the hands of the prosecutor.
To which type of statement does the law of Jackson v. Denno and the procedure of People v. Huntley apply, and when may the rights under those cases be exercised?
Due process requires that the law treat coerced admissions in the same manner that it treats coerced confessions (Ashcraft v. Tennessee, 327 U. S. 274). Our courts have long held that an accused’s right to a hearing on the issue of1 voluntariness pursuant to the Huntley decision is not limited to confessions, but also extends to statements of admissions (People v. Nadile, 26 A D 2d 765; People v. Gore, 22 A D 2d 1011; People v. Ross, 21 N Y 2d 258; People v. Hill, 17 N Y 2d 185; People v. Hocking, 15 N Y 2d 973; People v. Schwartz, 30 A D 2d 385).
In Bram v. United States (168 U. S. 532), the court applied the voluntariness tests where the accused made a statement which was exclupatory in nature, and in no sense an admission of guilt.
Speaking directly on the treatment to be afforded exculpatory statements, the court in United States ex rel. Royster v. McMann (292 F.Supp. 116,118) said: “ This distinction between inculpatory and exculpatory statements is dubious. An exculpatory statement may be coerced. Proved false, it shows a guilty state of mind and thus has the same evidentiary effect as an admission. It should be treated procedurally in the same way as any admission or confession.”
The Federal Supreme Court, in Miranda v. Arizona (384 U. S. 436, 476-477), ruled that the Fifth Amendment protects the accused from being compelled to incriminate himself in any manner. “ It does not distinguish degrees of incrimination * * * no distinction may be drawn between inculpatory statements and statements alleged to be merely £ exculpatory.’ If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution.”
New York courts have long held that the common-law tests of voluntariness must be applied to exculpatory statements. (People v. Ross, supra; People v. Schwartz, supra; People v. Mirenda, 23 N Y 2d 439; People v. Torres, 32 A D 2d 791; People v. Nadile, supra; People v. Harden, 17 N Y 2d 470.)
It is clear, then, that the law of Jackson v. Denno and the procedure of People v. Huntley apply with equal force to any oral or written confession, admission, or exculpatory statement made by a defendant. The substantive and procedural treat- *94 meats of such statements do not vary according to the method by which they were communicated.
In light of the discussion above, this court is inclined to view the difference between oral and written statements as one of mere form, rather than substance. All of the reasons advanced against disclosure of oral statements are the same ones which were rejected by the courts, and ultimately by the Legislature, with regard to disclosure of written or recorded ones. The reasoning utilized by the courts in Chirico, Quarles, Bach and Remaley is equally applicable to the disclosure of oral statements.
Indeed, it would seem that disclosure as to oral statements is more fundamental to due process and right to counsel. A man who makes a statement in the presence of a stenographer, or who reads and signs a written statement, can be expected to have a recollection of this act, and thus be able to forewarn his attorney. But even the intelligent layman, unfamiliar with the rules of evidence, may have retained no recollection of seemingly innocuous or inconsequential words spoken by him, in response to apparently cordial questioning or during police-initiated conversation of what he believes to be an unrelated subject, but which may result in evidence sufficient for conviction, where a prima facie case would not have been achieved without them. The defendant’s statements are the best type of evidence for the prosecutor and the most damaging to the defense. The slightest statement uttered during the initial encounter on the street, or over a cup of coffee in the detective’s room, or while being fingerprinted, or on the way to headquarters or to arraignment court, or during the taking of pedigree for the arrest forms, can, with other proven facts, result in evidence of the most catastrophic dimensions. The most illustrious counsel cannot adequately prepare a defense without knowing what his client has said. Yet, but for the fortuitous presence of the stenographer, he would have an absolute statutory right to its production.
The public policy of this 'State abhors the use of incriminating statements without first giving sufficient notice to the defendant and granting him an opportunity prior to litigation, to investigate and plan his defense accordingly (CPL 710.30; Judge Breitel’s dissent in People v. Ross, supra, pp. 264-265; People v. Mirenda, supra; People v. Buckman, 70 Misc 2d 220; People v. Harris, 25 N Y 2d 175; People v. Walls, 42 A D 2d 575).
'Subdivision 1 of CPL 710.30 states: “ Whenever the people intend to offer at trial (a) evidence of a statement made by a *95 defendant to a public servant * * * .they must serve upon the defendant a notice of such intention, specifying the evidence intended to he offered.”. (Emphasis supplied.) It is to be noted that the precursor >of this statute, section 813-f of the Code of Criminal Procedure did not require specificity. The word ‘ ‘ specify ’ ’ means 1 ‘ precise ’ ’; the use of that word dictates a detailed statement of particulars to distinguish from other things.
In this case, the District Attorney has served the following on the defendant: ‘ ‘ please take notice that pursuant to Section 710.30 of the Criminal Procedure Law, the People intend to offer at the trial of this indictment evidence of oral and/or written statement(s) made to a public servant pertaining to the charge set forth in the indictment.”
This generalized form notice must be supplemented where the defendant demands disclosure of his statements. ■ The defendant, in effect, is requesting the District Attorney to specify the evidence in conformity with the statute. The defendant is entitled to the substance of his oral statements, and the particulars as to when, where and to whom they were made.
In short, the statute codifies the Remaley doctrine that a defendant, upon request, is entitled to pre-Huntley disclosure of what is to be the subject matter of the Huntley hearing.
Where a defendant has made statements to law enforcement personnel, he has an absolute right, upon proper showing under article 710 of the CPL, to a pretrial hearing to determine their admissibility under CPL. 60.45. But, without disclosure of such statements, he cannot intelligently comply with the requirements of subdivision 1 of CPL 710.60 and thus indirectly can be denied his right to a pretrial hearing. Of course, if he is made aware of these statements during trial, he is entitled to a suppression hearing outside the presence of the jury.
This remedy, however, is fraught with peril and is hardly conducive to the orderly and proper administration of justice.
The law is now clear that the notice statute is not applicable to those of the defendant’s statements which the People intend to use merely for impeachment purposes (People v. Kulis, 18 N Y 2d 318, 322-323; People v. Harris, 25 N Y 2d 175; People v. Rahming, 26 N Y 2d 411).
In Harris v. New York (401 U. S. 222), the United .States Supreme Court held that a defendant who takes the stand may be impeached by a prior inconsistent statement, even though such statement was inadmissible in the State’s case in chief because of a failure to administer the warnings required by *96 Miranda v. Arizona ()supra), as long as the statement otherwise satisfied legal standards as to trustworthiness. The court reasoned that the purpose underlying exclusion of evidence tainted by Miranda error was to deter proscribed police conduct and that sufficient deterrence flowed from exclusion from the State’s case in chief. This deterrence function, the court concluded, should not be used to immunize or “ shield ” a defendant witness from traditional truth-testing devices of the adversary process. Harris, then, is bottomed on the premise that the mere failure to give Miranda warnings does not, of itself, in any way impair the reliability of the confession.
Where there are other reasons for the exclusion, however, such as trick, promise, or coercion, the trustworthiness of the statement is placed in issue, and the statement may not be used for any purpose, including impeachment on cross-examination, without a hearing to determine its voluntariness (People v. Walls, 42 A D 2d 575, 576-577, supra). Once again, without disclosure of .such statements, the defendant’s right to a pretrial hearing on this issue is effectively cut off. Assuming that the statements are voluntary, disclosure is still desirable. As the Chirico court noted, a defense attorney cannot make an intelligent decision as to whether he should allow his client to take the stand unless he knows what has been said to the police in his absence. Courts have stated in the past that disclosure should not be denied solely to give the prosecution a tactical advantage or to lay the basis for “ trial by ambush ” (Matter of Silver v. Sobel, 7 A D 2d 728; People v. Blair, 64 Misc 2d 519, 521). Simple justice requires that a defendant be made aware of what he will say on the witness stand through the mouths of police witnesses.
Finally, if the defendant made any oral statement which directly or indirectly resulted in the obtaining of physical evidence to be used at trial, due process requires that these statements likewise be disclosed (People v. Chirico, supra).
■ Truth is best revealed by a decent opportunity to prepare in advance of trial. Where the liberty and reputation of a defendant are in jeopardy, every reasonable 'opportunity and facility should be afforded him in the preparation of his case.
This court has the inherent power to compel disclosure of evidence which is material and relevant to the defense, or which is favorable to the accused, or where disclosure is necessary to avoid a delay in trial or to protect natural, essential, basic or constitutional rights of the defendant or where it is otherwise necessary to guarantee a fair trial or in the interest of justice. *97 (People ex rel. Lemon v. Supreme Ct., 245 N. Y. 24; People v. Waterman, 9 N Y 2d. 561; People v. Preston, 13 Misc 2d 802; People v. Stokes, 24 Misc 2d 755; People v. Marshall, 5 A D 2d 352; People v. Wargo, 149 Misc. 461; People v. Gatti, 167 Misc. 545; People v. Miller, 42 Misc 2d 794; People v. Roldan, 42 Misc 2d 501; People v. Quarles, supra; People v. Calandrillo, 29 Misc 2d 495; People v. Nassar, 60 Misc 2d 27; People v. Matera, 52 Misc 2d 674; People v. Rogas, 158 Misc. 567.)
The defendant’s request is highly relevant and material to his defense and meets many of the criteria listed in the preceding paragraph. A right sense of justice mandates disclosure, especially where no prejudice or damage can result to the prosecution.
The District Attorney is directed to reduce to writing the substance of those oral statements, not already written or recorded, made by the defendant to a public servant engaged in law enforcement activity or to a person then acting under his direction or in co-operation with him, which he intends to use as evidence or for the purposes of impeachment or which directly or indirectly resulted in the obtaining of physical evidence, and that he give the particulars as to the time and place of those statements and to whom they were made, within 30 days of the entry of this order. The People, of course, are not required to disclose res gestee statements.
IV. AS TO THE BEQUEST FOR PRETRIAL HEARINGS
1. The motion to suppress statements is denied, with leave to renew upon proper papers, which the defendant will be. able to prepare after the People comply with this .order. The relief requested is too broad, and the moving papers do not indicate exactly that which the court is requested to suppress.
2. The record clearly indicates that the victim, who is the People’s only eyewitness, while testifying before the Grand Jury on this case, was shown a photograph of the defendant by an Assistant District Attorney. This was the victim’s first identification of the defendant as the perpetrator of the robbery.
Clearly, a hearing should be held prior to trial to determine the admissibility of an in-court identification of the defendant by the victim due to a previous identification of the defendant by a photograph shown in the Grand Jury room (United States v. Wade, 388 U. S. 218; Gilbert v. California, 388 U. S. 263; Stovall v. Denno, 388 U. S. 293; CPL 710.10, subds. 2, 3; CPL 710,20, 710.30, 710.60).
*98 V. AS TO BAIL SEDUCTION
The defendant’s papers set forth only those facts which were known to the Judge who originally fixed bail. "Where the defendant does not come forward (with new or additional facts which have a bearing on bail, his application to alter another Judge’s determination on that issue should be summarily denied, absent mandatory provisions of law.
It is, therefore, ordered, that the District Attorney permit the defendant’s attorney to inspect and to copy or photograph any written or recorded statement made by the defendant to a public servant engaged in law enforcement activity or to a person then acting under his direction or in co-operation with him, ■within 30 days of the entry of this order;
Ordered, that the District Attorney reduce to writing the substance of any oral statements, not already written or recorded, made by the defendant to a public servant engaged in law enforcement activity or to a person then acting under Ms direction or in co-operation with him, if the District Attorney intends to use such as evidence or for the purposes of impeachment or if such oral statements, directly or indirectly, resulted in the obtaining of physical evidence, within 30 days of the entry of tMs order;
Ordered, that a hearing be held prior to trial to determine the admissibility of the victim’s potential testimony at trial identifying the defendant due to the prior identification of the defendant by that witness by means of a photograph shown to Mm while testifying before the Grand Jury.
The motion, in all other respects, is denied.