THE STATE OF OHIO, APPELLEE, *v.*
GOODEN, APPELLANT.

(No. 785—Decided November 30, 1983.)

*Mr. Glen O. Hamilton,* assistant prosecutor, for appellee.

*Mr. Randall M. Dana,* public defender, and *Ms. Jill E. Stone,* for appellant.

RINGLAND, J. The record indicates that on December 27, 1981, inmate Kinnie Joe Bailey was asleep in his cell at the London Correctional Institute when he was attacked and beaten about the head with an eighteen-inch chair leg. He awakened, succeeded in defending himself with his arms and allegedly saw his assailant standing over him. The assailant had removed his clothing. Bailey succeeded in taking the club from the assailant and the assailant ran to the back of the cell range. The only exit from the range was across from Bailey's cell; no one entered or left from the range until after the guards had secured it. A pair of pants belonging to a third party were found in the victim's cell. The club was also found and had been wrapped with tape to fashion a handle.

Subsequent to the attack, appellant James Gooden's cell was searched and found to contain a chip of wood which perfectly matched the missing piece from the club and tape similar to that used to fashion the club's handle. The victim also identified appellant as the assailant. Appellant was then questioned without *Miranda* warnings by Officer Timmons from the London Correctional Facility; appellant admitted he was the assailant. After questioning, he was placed in isolation. On December 28, 1981, appellant sent word that he wished to talk to the deputy assistant warden and admitted that he was the assailant. Again, on December 28, 1981, appellant admitted his crime to the institution's Rule and Infraction Board. On December 30, 1981, two days after the last statement made by appellant, he was interviewed by Trooper Rohner of the Ohio State Highway Patrol who, prior to taking his statement, advised appellant for the first time of his *Miranda* warnings. Subsequent to stating that he understood the warnings and signing a waiver, appellant made a full confession in writing.

Appellant was then indicted for felonious assault on January 28, 1982, in violation of R.C. 2903.11, and attempted rape in violation of R.C. 2923.02. At his arraignment, appellant entered a plea of not guilty and was appointed counsel.

Prior to the trial, motions to suppress were filed concerning the confessions which were made. At the suppression hearing, the trial court ordered that

all confessions made to the prison staff were to be excluded from the evidence on the basis that *Miranda* warnings were not given. The statement made to Rohner, however, was not suppressed.

During trial, upon the state's examination of Timmons, he testified as follows:

"Q. Do you know whose pants they were?

"A. Only those are larger size than Bailey wore and inmate Gooden said they were his, told me they were his."

At that time, defense counsel objected and moved for a mistrial, both of which were denied by the court. Subsequent to trial, the jury returned a verdict of guilty on the charge of felonious assault, but was unable to reach a verdict on the charge of attempted rape. The attempted rape count was dismissed without prejudice, and the defendant was subsequently sentenced on August 4, 1982 to a term of four to fifteen years to run consecutively with his previous sentence. A motion for a new trial was filed in the Court of Common Pleas of Madison County and subsequently denied. A timely notice of appeal was filed with the court of appeals.

The assignments of error having been fully considered are passed upon in conformity with App. R. 12(A) and are as follows:

First Assignment of Error:

"The trial court erred to the prejudice of defendant when it admitted an inculpatory statement of the defendant and denied his motion for mistrial."

Second Assignment of Error:

"The trial court erred when it admitted into evidence an inculpatory statement of the appellant which was procured by the state in violation of the appellant's Fifth and Fourteenth Amendment Rights."

The court will discuss the assignments of error in the reverse order in which they have been presented.

Appellant contends in his second assignment of error that the trial court erred when it admitted into evidence the inculpatory statements of the appellant which were procured by Rohner in violation of appellant's Fifth and Fourteenth Amendment rights and contrary to the dictates of *Miranda* v. *Arizona* (1966), 384 U.S. 436 [36 O.O.2d 237]. Appellant claims that this confession, the last of four, should have been suppressed because the prior illegality from the first three confessions tainted the final confession as there was no "break in the stream of events," citing *Clewis* v. *Texas* (1967), 386 U.S. 707, 710.

In *Wong Sun* v. *United States* (1963), 371 U.S. 471, 484-488, the United States Supreme Court determined that inculpatory statements elicited by government agents which are "fruits" of prior unconstitutional action on behalf of the agents are not admissible against the accused. If, however, the connection between the prior illegality — the tainted — and the subsequent statement becomes " 'so attenuated as to dissipate the taint,' " then the statement will be admissible. *Id.* at 491, quoting *Nardone* v. *United States* (1939), 308 U.S. 338, 341. The United States Supreme Court in *Brown* v. *Illinois* (1975), 422 U.S. 590, 600-603, discussed and clarified the requirements of the *Wong Sun* holding. The *Brown* court found that *Wong Sun* requires the following in order for statements elicited after a prior taint to be admissible: (1) that the statement was voluntary, and (2) that the accused exhibited sufficient free will, which free will "purges" the primary taint. *Id.* at 599, 603-604. The *Brown* court asserted that the voluntariness question must be answered on the facts of each case. *Id.* at 603-604. The court also asserted that *Miranda* warnings given to an accused following prior illegality will not always "purge" the taint of that preceding illegality. The court added: "No single fact is dispositive. The workings of the human mind are too complex * * *." *Id.* at 603.

The Supreme Court in *Rawlings* v. *Kentucky* (1980), 448 U.S. 98, clarified the *Brown* holding. The *Rawlings* court identified the criteria set forth in *Brown* for a proper "purging" of a prior taint so that a subsequent confession will be admissible. *Id.* at 107, citing *Brown, supra,* at 603. These criteria are as follows:

1. *Miranda* warnings are important yet not dispositive.

2. The "temporal proximity" of the prior taint and the confession.

3. Any intervening circumstances between the prior taint and the statements which would indicate that the statements were the product of a free will.

4. The purpose and flagrancy of the official misconduct.

5. Voluntariness, under a totality of circumstances approach is the threshold requirement.

It appears to this court that the concept "break in the stream of events" set forth in *Clewis* comports with the second and third criteria of the *Brown* and *Rawlings* cases — temporal proximity and intervening circumstances. Thus, the *Clewis* "break in the stream" criterion may be read in conjunction with the *Brown* requirements, with the voluntariness of the confession being the most important requirement as mentioned in *Brown. Id.* at 603.

Additionally, the Supreme Court of Ohio set forth criteria determining, under the totality of circumstances, whether a confession is voluntary. In *State* v. *Edwards* (1976), 49 Ohio St. 2d 31 [3 O.O.3d 18], judgment vacated insofar as it leaves undisturbed the death penalty imposed (1978), 438 U.S. 911, the Ohio Supreme Court stated at paragraph two of the syllabus: "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and fre-quency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." This holding was approved and followed by the court in *State* v. *Barker* (1978), 53 Ohio St. 2d 135 [7 O.O.3d 213], certiorari denied (1978), 439 U.S. 913. Thus, this court considers all these criteria together, the Ohio test set forth in *Edwards,* the *Clewis* "break in the stream of events" test and the *Brown* test, to determine the voluntariness of appellant's fourth confession and whether the prior taint of illegal government action in eliciting the first confession is "purged" so that the fourth confession is properly admissible.

On the facts of the instant case, we hold that the illegalities surrounding the taking of the first confession — the "taint" — were sufficiently purged so that, consequently, the fourth confession was properly admissible.

The totality of the circumstances surrounding the fourth confession by appellant indicates that it was voluntary, the product of appellant's free will. *Wong Sun, supra,* at 486. Further, the circumstances indicate that the appellant was, at the time of the fourth confession, in "possession of 'mental freedom' to confess or deny suspected participation in * * * [the] crime," *Lyons* v. *Oklahoma* (1944), 322 U.S. 596, 602, rehearing denied (1944), 323 U.S. 809, so that his statements were given voluntarily.

In this analysis, we consider that the following facts taken together indicate that there indeed was a "break in the stream of events" and a voluntary confession. First, the fourth confession was given by appellant during an independent investigation of the alleged crime. There was evidence that the appellant was apprised that an independent investigation would be conducted. The interrogation conducted by Rohner was not connected with the prison or with its internal disciplinary functions.

Further, the interrogation which led

to the appellant's fourth confession was conducted two days after the prior illegally obtained statements. There is no evidence of coercion or of a coercive purpose of officials in the prior failure to apprise appellant of his *Miranda* rights. Additionally, there is no evidence of any mental condition or impairment of appellant which may have prevented him from comprehending the nature of his statement and of his waiver of *Miranda* rights at the independent interrogation.

The appellant has had "prior criminal experience" through the criminal justice system. There is evidence that previously during a prison conducted interrogation, that appellant had exercised his constitutional privilege against self-incrimination.

Moreover, there is no evidence that the length of prior interrogations or of the interrogation in question were excessive in length so as to constitute mistreatment. There was no evidence that appellant was subjected to any type of physical deprivation or mistreatment whatsoever during the interrogation in question. Nor does the evidence reveal that interrogations were frequent; a two-day cutoff in questioning before the commencement of an independent investigation is reasonable.

These facts, taken in combination with the fact that prior to the independent interrogation the appellant was apprised of his *Miranda* rights, demonstrate that there was indeed a "break in the stream of events" and that the inculpatory statements made by appellant were voluntarily given, the statements being "sufficiently an act of free will to purge the primary taint." *Wong Sun, supra,* at 486.

The appellant's second assignment of error is not well-taken and is overruled.

The first assignment of error is that the court erred when it admitted an inculpatory statement of the defendant as testified by Timmons. The assignment of error is actually based upon three sub-issues:

1. That the inculpatory statement was admitted contrary to the *corpus delicti* rule.

2. That the inculpatory statement of the appellant had not been disclosed pursuant to Crim. R. 16 and, therefore, violated the appellant's Sixth Amendment right to competent counsel and procedural due process.

3. That the admission of the inculpatory statement through the testimony of Officer Timmons violated his Fifth Amendment protection rights against self-incrimination.

Under his first assignment of error, the appellant has complained that the trial court violated its own pretrial order by permitting the admission of the testimony of Timmons regarding appellant's confession allegedly before the state had first established the *corpus delicti* of the offense. The Supreme Court of Ohio has rendered the touchstone decision on *corpus delicti* principle in *State* v. *Maranda* (1916), 94 Ohio St. 364. In *Maranda* the court held that an extra-judicial confession is admissible in evidence when the state has put on some evidence, not necessarily direct and positive, but possibly circumstantial, tending to show that in fact a crime was committed. It is sufficient to establish *corpus delicti* if there is *some* evidence outside the confession which tends to prove some material element of the crime charged. *State* v. *Black* (1978), 54 Ohio St. 2d 304 [8 O.O.3d 296]. In the instant matter, evidence at that point had been adduced that a victim was bleeding and yelling, and that he had been attacked with a club by another inmate. The victim gave a general description of his assailant; only two inmates on the whole range fit the general description, one of whom was the appellant. On first observation Gooden was without his pants; and there were a pair of pants in the victim's cell which did not belong to

the victim. The victim later identified the appellant specifically. Chips from the chair leg were found in appellant's cell as well as surgical tape. Certainly under the *Black* and *Maranda* doctrine the state has established more than some evidence to tie appellant to the crime and establish that a crime had been committed.

Appellant further argues that a mistrial should have been granted and his objection sustained in that the statement which has been testified to by Timmons had not been disclosed to appellant per Crim. R. 16. The trial court ruled that only summarized or prerecorded oral statements of the appellant are discoverable while those statements that have not been reduced to writing are not discoverable. Crim. R. 16 states in part:

"(B)(1) Information subject to disclosure.

"(a) Statement of defendant or co-defendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:

"(i) Relevant written or recorded statements made by the defendant or co-defendant, or copies thereof;

"(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer;"

In Ohio, there is a marked paucity of case law construing Crim. R. 16(B)(1)(a)(ii) in the perimeter of its application. The appellee relies on the ruling of *State v. Montalvo* (1974), 47 Ohio App. 2d 296 [1 O.O.3d 357]. The *Montalvo* court held the rule does not encompass discovery by defendant of his oral unrecorded statements given to a law enforcement officer. In *Montalvo,* the defendant was charged with rape, abduction and robbery. Defendant had set up a defense of alibi. At trial, defendant brought on three witnesses each testifying that defendant had been at a friend's home on the night in question. The state brought on a rebuttal witness, a law enforcement officer who testified that during interrogation defendant had stated that he had been at work all evening, then afterwards that he had gone to a night club and then went home to bed. On cross-examination, the police officer stated that he had made no notes of the interrogation and none of the particular statements in question. Defendant subsequently was convicted on each of the three counts. On appeal, defendant urged that the "rebuttal testimony offered by the state was properly discoverable but not made available to the defendant despite proper pretrial motions," and that the rebuttal testimony should have been excluded as it was in direct violation of the Rules of Criminal Procedure. The *Montalvo* court affirmed defendant's conviction holding that oral statements given to law enforcement officers are not contemplated under Crim. R. 16(B)(1)(a)(ii) and that "written summaries of any oral statement" do not include unrecorded oral statements made by an accused.

The *Montalvo* court in support of its holding cited three federal cases from the Southern District of New York which construed the federal counterpart to Ohio Crim. R. 16: *United States* v. *Dioguardi* (S.D.N.Y. 1971), 332 F. Supp. 7, 17; *United States* v. *Dorfman* (S.D.N.Y. 1971), 53 F.R.D. 477; and *United States* v. *Edwards* (S.D.N.Y. 1967), 42 F.R.D. 605. Only the *Dioguardi* case can be said to be supportive.

In *Dorfman, supra,* the court determined that under Fed. R. Crim. P. 16 an accused is not entitled to inspect oral statements made by him to government witnesses who were third parties rather

than government agents or law enforcement officers which statements were subsequently reduced to written form. The *Dorfman* holding adopted by the *Montalvo* court is thus distinguishable from the case at bar, because in the instant matter, appellant's oral statements were made to a law enforcement officer rather than to a third party, and the appellant's statements were never reduced to writing. The *Montalvo* court's utilizing the *Dorfman* holding is unpersuasive to this court, and indeed we fail to see how the *Montalvo* court found the *Dorman* decision supportive in that case.

In *Edwards, supra,* the court held that oral statements of an accused reduced to writing in the form of "internal Government memoranda" are exempted from discovery procedures beneficial to the accused under Fed. R. Crim. P. 16. Again, the *Edwards* decision is distinguishable from the case at bar for the reason that the oral statements made by appellant were never reduced to any written form and certainly not in an internal memoranda form. Again, this court fails to see how the *Edwards* decision lends support to the *Montalvo* court holding. Neither the *Edwards* nor *Dorfman* holdings seem apposite to the instant case. The more recent holding of *United States* v. *Boffa* (D. Del. 1980), 513 F. Supp. 444, provides a more contemporary interpretation and implementation of the discovery mechanism under Crim. R. 16, an interpretation this court finds persuasive in the case at bar as to proper utilization of discovery mechanics under the Ohio rule.

In *Boffa,* the court ordered the government to provide the individual defendants with the substance of any oral statements made by that defendant and intended for use as evidence by the government which were made during interrogation at any time to any person then known by the declarant defendant to be a government agent or law enforcement officer. The *Boffa* court made no discussion of whether or not Crim. R. 16 limits discovery on behalf of the defendant to written summaries of oral statements that have been in existence prior to the discovery request; it simply ordered the government to provide the substance and information that the defendants sought through discovery.

The order made by the *Boffa* court comports with the decision of a New York court in *People* v. *Utley* (1974), 77 Misc. 2d 86, 353 N.Y. Supp. 2d 301, which discussion was cited in this court by appellant. The *Utley* court recognized that insofar as discovery mechanisms enhance constitutional protections such as insuring voluntary confessions, there is no difference between permitting discovery of written statements versus oral statements, save a difference in form. Although the *Boffa* court failed to launch into a lengthy discussion of the relationship between liberal discovery of written and oral statements and the enhancement of constitutional rights as did the *Utley* court, the *Boffa* court's order reflects a similar underlying rationale. Broad liberal discovery contributes to the accurate determination of an accused's guilt or innocence. See Advisory Committee Notes to Proposed Amendments to Criminal Rules (Jan. 1980), 48 F.R.D. 553, 597, cited in Alpin & Dowd, Gilday & Metz (1982), 1 Anderson's Ohio Criminal Practice & Procedure 206. Broad discovery is consistent with the goal of the criminal justice system to diminish any chance that an innocent man might be found guilty of a crime. Alpin & Dowd et al., *supra,* at 205. Further, broad discovery promotes efficient police work.

For all of the aforementioned reasons, this court finds that the *Montalvo* holding and fact pattern do not control. However, appellant alleges that the failure of discovery violated his constitutional rights to effective counsel and impaired his right of due process.

We find that on the constitutional grounds of ineffective assistance of counsel and due process that appellant was apprised of the statement prior to trial outside Crim. R. 16 in this particular case by testimony given at the prior suppression hearing. The testimony of Timmons was certainly no surprise to appellant and he certainly could have been prepared for this statement. Appellant's arguments, therefore, are not well-taken.

In any event, the Supreme Court of Ohio has recently ruled that failure to provide discovery does not in and of itself require suppression of the evidence particularly where there is no showing that: (1) the accused was prejudiced by the admission, (2) the prosecutor's failure to provide discovery was willful, and (3) knowledge of the statement would have benefited the accused in his defense. *State* v. *Parson* (1983), 6 Ohio St. 3d 442. In the case at hand, as previously discussed, the accused was aware of the statement beforehand. There is no showing that the prosecutor's failure to disclose was willful and, as discussed below in more detail, any prejudice or error to the defendant was insufficient and harmless compared to the overwhelming evidence against him otherwise. The *Parson* court further held that the oral statement was discoverable despite the fact that it had not been reduced to a written summary, citing *United States* v. *Lewis* (D.D.C. 1975), 511 F.2d 798. In so holding, however, the court did not expressly mention nor expressly overrule *Montalvo, supra.*

Perhaps appellant's most persuasive argument goes to the fact that the statement should have been suppressed because it was contrary to the court's previous order of suppression and *Miranda* v. *Arizona, supra.* To this the court agrees. It is clear from the facts that appellant was in custody when he made this admission to Timmons. Fur-

ther, there is no dispute that Timmons failed to advise him of his rights under *Miranda* and the Fifth and Fourteenth Amendments to the United States Constitution. The statement was improperly admitted.

However, the issue is whether or not the admission of the statement was in itself plain error or harmless error. R.C. 2945.83(C) provides that no judgment of conviction shall be reversed or motion for a new trial be granted because of the admission of evidence offered against the accused "unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby * * *." A court may hold the error harmless only if it is able to declare a belief that the error was harmless beyond a reasonable doubt. *Chapman* v. *California* (1967), 386 U.S. 18, 24. The "beyond a reasonable doubt" test of *Chapman* has been adopted by Ohio to resolve questions dealing with federal constitutional errors. *State* v. *Eubank* (1979), 60 Ohio St. 2d 183. The Ohio courts have held that error in the admission of evidence is harmless beyond a reasonable doubt if there is no reasonable possibility that the evidence may have contributed to the conviction of the accused. *State* v. *Bayless* (1976), 48 Ohio St. 2d 73 [2 O.O.3d 249], judgment vacated insofar as it leaves undisturbed the death penalty imposed (1978), 438 U.S. 911. The court has most recently refined its harmless error test and its beyond a reasonable doubt interpretation. *State* v. *Williams* (1983), 6 Ohio St. 3d 281. The court has determined that where there is an apparent federal constitutional error and the admission of inculpatory statements of an accused, the constitutional error is harmless beyond a reasonable doubt when, standing alone, the remaining evidence is overwhelming proof of the accused's guilt. *Id.* at 290. Here again was identification by the victim of the assailant, evidence of part of the weapon

in the appellant's jail cell, and circumstantial evidence, as well as a later confession by the appellant of the commission of the crime. The allowance of the statement of Timmons that "he said they [the pants] were his, told me they were his" was harmless for the remaining evidence standing along comprises overwhelming proof of the defendant's guilt.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

HENDRICKSON, P.J., and JONES, J., concur.

RINGLAND, J., of the Court of Common Pleas of Clermont County, sitting by assignment in the Twelfth Appellate District.