The STATE of Ohio, Appellee,

v.

CALLIHAN, Appellant.

[Cite as *State v. Callihan* (1992), 80 Ohio App.3d 184.]

Court of Appeals of Ohio,
Scioto County.

No. 1947.

Decided May 20, 1992.

*Lynn Alan Grimshaw,* Prosecuting Attorney, for appellee.

*Stephen C. Rodeheffer* and *Mark W. Price,* for appellant.

---

Peter B. Abele, Judge.

This is an appeal from a judgment of conviction and sentence entered by the Scioto County Common Pleas Court. The jury found John R. Callihan, defendant below and appellant herein, guilty of aggravated trafficking in drugs in violation of R.C. 2925.03, a felony of the first degree.

Appellant's counsel assigns three errors, and appellant, *pro se,* assigns four additional errors which we number four through seven:

First Assignment of Error:

"The trial court committed reversible error when it overruled defendant's motion to suppress the statement made by the defendant for the following reasons. The state did not meet its burden of proving that Mr. Callihan had been advised of his constitutional rights pursuant to *Miranda v. Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966). That statement that defendant owned the motorcycle containing the cocaine made at the time of defendant's arrest was not provided to defendant until the morning the trial began. Finally the court re-opened the evidence after the motion was sustained in violation of the doctrine of res judicata without the state moving for relief pursuant to Criminal Rule 33 or requesting any other appropriate relief from the court's decision pursuant to Criminal Rule 12(J)."

Second Assignment of Error:

"The failure of the prosecutor to provide the defendant with the names of two (2) key witnesses before the first (1st) day of trial constituted reversible error, inasmuch as said failure denied defendant his right to a fair trial."

Third Assignment of Error:

"The trial court committed reversible error when it denied defendant's motions for mistrial inasmuch as certain testimony—some of which the court admitted and some of which the court was required to strike from the record after the jury heard it—was so inflammatory that the impartiality of the jury must have been affected."

Fourth Assignment of Error (*pro se* ):

"The defendant-appellant's conviction was obtained in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; *accord:* Sections 10 and 16, Article I to the Ohio Constitution, in that said conviction is based upon perjured testimony of prosecution witnesses."

Fifth Assignment of Error (*pro se*):

"The defendant-appellant's conviction was obtained in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; *accord:* Sections 10 and 16, Article I to the Ohio Constitution, in that said conviction is based upon prosecutorial misconduct of coerced perjured testimony of prosecution witnesses."

Sixth Assignment of Error (*pro se*):

"The defendant-appellant's conviction was obtained in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; *Accord:* Sections 10 and 16, Article I to the Ohio Constitution, in that said conviction is based upon police misconduct of coerced perjured testimony of key prosecution witnesses."

Seventh Assignment of Error (*pro se*):

"The defendant-appellant's conviction was obtained in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; *Accord:* Sections 10 and 16, Article I to the Ohio Constitution, in that said conviction is based upon prosecutorial misconduct of withholding 'material' exculpatory evidence in favor of the defense."

On April 29, 1990, law enforcement officers executed a search warrant and found cocaine in appellant's residence and in the foot pegs of a motorcycle parked in a carport attached to the residence. On May 14, 1990, the grand jury indicted appellant for aggravated trafficking in cocaine in violation of R.C. 2925.03(A)(4), (C)(4) and (D)(6).

On October 1, 1990, appellant filed a motion to suppress the cocaine found in the motorcycle. Appellant argued the search warrant did not grant the law enforcement officers authority to search the motorcycle found in the carport attached to the residence. Appellant argued the officers should have obtained a separate search warrant to search the motorcycle.

On October 16, 1990, the court held a hearing on the motion to suppress. Detective William Meixner testified the search warrant authorized the officers to search not only the residence, but also to search "the curtilage thereof." Detective Meixner testified the curtilage in this case included the carport. Sheriff John Hull similarly testified the search of the motorcycle was part of the search of the residence. Both officers testified the carport is attached to the house. At the conclusion of the hearing, the court denied appellant's motion to suppress the cocaine found in the motorcycle.

On October 17 and 18, 1990, the court conducted a jury trial. During the lunch recess on the first day, the prosecutor provided appellant's attorney with supplemental discovery indicating appellant had stated he owned the

motorcycle. The court noted the late discovery on the record and *sua sponte* proceeded to hold a hearing on whether the statement was made voluntarily and after appellant had been advised of his *Miranda* rights.

During that hearing, Sheriff John Hull testified that after another officer had read appellant his *Miranda* rights, appellant admitted he owned the motorcycle. Detective Meixner testified he heard appellant make the admission, but did not know whether anyone had read appellant his *Miranda* rights prior to the admission.

After Hull and Meixner's testimony, the court invited appellant to make a formal motion to suppress. Appellant accepted the invitation and moved to suppress the statement. Appellant based his motion on two grounds: (1) the lack of a *Miranda* warning, and (2) the late discovery. The court sustained the motion after finding appellant was not informed of his *Miranda* rights prior to admitting he owned the motorcycle.

Immediately after the court sustained the motion, appellee requested the court to reopen the evidence on the motion. The court granted the request and permitted appellee to call Sheriff's Department employee Marty Donini to the witness stand. Donini testified that someone read appellant his *Miranda* rights before appellant admitted he owned the motorcycle. Donini further testified that he himself might have been the one who advised appellant of his *Miranda* rights. After Donini's testimony, the court overruled appellant's motion to suppress his statement admitting he owned the motorcycle.

The state presented eight witnesses during the trial on the merits. Detective Meixner identified various photographs taken during the search of appellant's residence. One photograph depicted the motorcycle with a piece of leather on the gas tank. Written on the piece of leather was the name "Smiley." Two other photographs depicted bags of cocaine in the foot pegs of the motorcycle. Another photograph depicted the bathroom of the residence where law enforcement officers found a spoon and a piece of cotton. Both the spoon and the cotton tested positive for cocaine.

Appellant objected when Detective Mychal Turner testified he had been to appellant's residence three or four times to purchase cocaine. When sustaining the objection, the court commented that the evidence was highly prejudicial. Immediately thereafter, appellant moved for a mistrial. The court denied the motion and instructed the jury to disregard Turner's testimony about going to appellant's residence to purchase cocaine.

Patrolman David Bennett testified he knew appellant by the name "Smiley." He further testified that (1) the vehicle identification number ("VIN") on the frame chassis at the gooseneck area of the motorcycle was not a number placed there by the Harley–Davidson Company, which made the motorcycle;

(2) the other VINs on the motorcycle did not match; and (3) the VIN on the engine was not stamped at the factory, but was stamped by someone who tried to make it look like a Harley–Davidson VIN.

Patrolman Bennett identified a certificate of title to a Harley–Davidson motorcycle which the state of Ohio had issued to appellant. Patrolman Bennett noted that none of the VINs he found on the motorcycle in question matched the VIN on the certificate of title. He testified that he was relatively certain that the motorcycle in question is a composite of a number of different motorcycles.

At this point in Patrolman Bennett's testimony, appellant approached the bench and made two motions. First, appellant moved the court to strike all of Patrolman Bennett's testimony. Second, appellant moved for a mistrial. The court overruled both motions.

Sheriff John Hull testified appellant admitted owning the motorcycle. Sheriff Hull further testified he found cocaine in the foot pegs of the motorcycle, and saw cocaine in appellant's residence.

William Lavey testified he has known appellant for thirteen years and has sold drugs for appellant. The court overruled appellant's objection to Lavey's testimony about selling drugs for appellant. Lavey further testified he saw appellant in possession of cocaine on the day in question. Lavey identified the motorcycle foot pegs in question as the foot pegs appellant used to transport cocaine.

Appellant presented only one witness, his friend Morton Gale Scott. Scott testified he knew appellant by the name "Smiley." Scott admitted he hid the cocaine in the foot pegs of appellant's motorcycle. Scott further testified the cocaine belonged to William Lavey's brother, Dave Lavey.

The state presented William Lavey's wife, Angie Lavey, on rebuttal. She recanted her earlier statements to the prosecutor that Dave Lavey had brought the motorcycle foot pegs in question to her house. She testified that appellant had come into her house early in the day on April 29, 1990 and asked for the motorcycle foot pegs. When she gave the pegs to appellant, he opened them and showed her the cocaine.

The jury found appellant guilty as charged. The court fined appellant $5,000 and sentenced him to four to ten years in prison, with eighteen months of actual incarceration. Appellant filed a timely notice of appeal.

I

In his first assignment of error, appellant asserts the trial court erred by overruling his motion to suppress a statement he made indicating he owned

the motorcycle in question. Appellant argues (1) the state failed to meet its burden of proving law enforcement officers advised him of his *Miranda* rights; (2) the state failed to disclose the statement to appellant until the morning the trial began; and (3) the court, after first sustaining appellant's motion to suppress, reopened the hearing on the motion without first having a proper motion from the state.

Appellee argues appellant failed to raise an objection when the statement was admitted into evidence, and, thus, appellant waived his right to object to the court's ruling on the motion to suppress. Appellee relies on Evid.R. 103(A)(1), which provides:

"Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

"(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context * * *."

Appellee cites three cases from other states, one federal case, and one Ohio case in support of its waiver argument.

We note the Ohio case, *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, does not involve a motion to suppress, but rather involves a motion *in limine.* The court held that the denial of a motion *in limine* does not preserve error for review. A defendant must raise a proper objection at trial to preserve the error for review.

The federal case appellant cites, *United States v. Neumann* (C.A.8, 1989), 867 F.2d 1102, 1105, relies upon an earlier federal case concerning a motion *in limine,* not a motion to suppress. In *United States v. Sides* (C.A.10, 1991), 944 F.2d 1554, the court acknowledged that the goal of Evid.R. 103(A)(1) is to ensure the trial judge has an opportunity to correct potential errors. The *Sides* court wrote at 1560:

"When counsel diligently advances the contentions supporting a motion and fully apprises the trial judge of the issue in an evidentiary hearing, application of the rule makes little sense. * * *"

We agree that when counsel fully advises the trial court of a suppression of evidence issue during a motion to suppress hearing, it makes little sense to require counsel to raise an additional objection when the evidence in question is introduced into evidence. We note Evid.R. 103(A)(1) requires litigants to make either a "timely objection or motion to strike." We believe a motion to suppress, duly made and diligently litigated at a pretrial hearing, serves as the "timely objection" contemplated by the drafters of Evid.R. 103(A)(1).

In *State v. Hall* (1989), 57 Ohio App.3d 144, 567 N.E.2d 305, the court held that where a defendant's motion *in limine* is treated as a motion to suppress, error in the court's ruling on the motion is preserved for review. The court wrote at 146, 567 N.E.2d at 307–308:

"A 'pretrial' motion is defined as '[a]ny defense, objection, or request which is capable of determination without the trial of the general issue * * *.' Crim.R. 12(B). A motion to suppress evidence is such a motion, but only if the basis of exclusion is that the evidence was illegally seized. Crim.R. 12(B)(3). Where the basis is other than illegal seizure, appellate courts have held that a no contest plea after an adverse ruling in limine does not preserve any error. * * *

" * * * The essential difference between a Crim.R. 12(B) motion and a motion in limine is that the former is capable of resolution without a full trial, while that latter requires consideration of the issue in the context of the other evidence."

In the case *sub judice*, the basis of appellant's motion to suppress was the alleged unlawful seizure. Appellant's motion was a Crim.R. 12(B) motion capable of resolution without a full trial.

Accordingly, we hold appellant's motion, standing alone, constituted the timely objection required by Evid.R. 103(A)(1). We reject appellee's arguments that appellant failed to preserve for review the matter of his statement admitting ownership of the motorcycle. We will now proceed to examine the three arguments appellant raises in support of his first assignment of error.

Appellant first argues appellee failed to present sufficient evidence to prove appellant was advised of his *Miranda* rights prior to making the statement. We disagree.

During the trial, the court conducted a hearing on the motion to suppress evidence out of the presence of the jury. In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Clay* (1973), 34 Ohio St.2d 250, 298 N.E.2d 137; *State v. Warren* (Aug. 12, 1991), Hocking App. No. 90CA7, unreported, 1991 WL 156521. Thus, the credibility of witnesses during a motion to suppress evidence hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Tutt* (Apr. 14, 1986), Warren App. No. CA85–09–056, unreported, 1986 WL 4506. Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. DePalma* (Jan. 18, 1991), Ross App. No. 1633, unreported, 1991 WL 13824. Accepting these facts as

true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard. See *State v. Shelpman* (May 23, 1991), Ross App. No. 1632, unreported, 1991 WL 87312; *State v. Simmons* (Aug. 30, 1990), Washington App. No. 89CA18, unreported, 1990 WL 127065.

In the case *sub judice,* although the evidence does not reveal exactly which officer among the many present at the execution of the search warrant advised appellant of his rights, Deputy Donini testified someone read appellant his rights before appellant made the incriminatory statement. In *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, the court emphasized that appellate courts must defer conflicts in the evidence to the trier of fact who had the opportunity to hear the witnesses and observe their demeanor. The court wrote at 123, 22 OBR at 202, 489 N.E.2d at 280:

"The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."

Accordingly, we must refrain from second-guessing the trial court's judgments regarding the weight and credibility of Donini's testimony and defer to the trial court's choice to believe that appellant was advised of his constitutional rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

■ Next, appellant argues the state failed to disclose the statement to appellant until the morning of trial. Appellant cites *State v. Parson* (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689, and *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 514 N.E.2d 394, for the proposition that the state's failure to provide discovery to a defendant constitutes reversible error if either the failure was willful or the defendant suffered prejudice as a result of the failure.

In the case *sub judice,* we find appellee's failure to provide discovery of the statement was neither willful nor prejudicial. Until the day of trial, appellee apparently had no reason to believe that ownership of the motorcycle would be at issue. In light of all the other evidence against appellant, his statement about the ownership of the motorcycle was not crucial to the case. The motorcycle had appellant's nickname "Smiley" on a piece of leather on the gas tank. The license tags on the motorcycle matched a certificate of title issued in appellant's name. The motorcycle was found in appellant's carport.

In response to appellant's assertion that appellee failed to provide appellant with timely discovery of the statement, appellee notes Crim.R. 16(B)(1)(a)(ii)

does not require discovery of oral statements which have not been reduced to writing. The rule provides:

"(B) Disclosure of evidence by the prosecuting attorney.

"(1) Information subject to disclosure. * * *

"(a) Statement of defendant or co-defendant. * * *

"(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer[.]"

In *State v. Montalvo* (1974), 47 Ohio App.2d 296, 1 O.O.3d 357, 353 N.E.2d 855, the Seventh District cited three federal cases from New York involving the federal counterpart to Crim.R. 16. The Seventh District wrote at paragraph two of the syllabus:

"Oral statements given to a police officer by a defendant are not such as are contemplated by Crim.R. 16(B)(1)(a)(ii), 'written summaries of any oral statement, or copies thereof.'"

In *State v. Sampson* (1982), 4 Ohio App.3d 287, 4 OBR 536, 448 N.E.2d 467, the Seventh District followed its *Montalvo* decision and held that Crim.R. 16(B)(1)(a)(ii) does not require the state to provide discovery of oral statements which have not been summarized in writing.

The law on this issue has since changed in Ohio. In *State v. Gooden* (1983), 16 Ohio App.3d 153, 16 OBR 162, 474 N.E.2d 1237, the Twelfth District examined in detail the three federal cases cited by the Seventh District in *Montalvo*. The Twelfth District discounted two of the cases, and wrote at 158, 16 OBR at 167, 474 N.E.2d at 1242:

"The more recent holding of *State v. Boffa* (D.Del.1980), 513 F.Supp. 444, provides a more contemporary interpretation and implementation of the discovery mechanism under Crim.R. 16, an interpretation this court finds persuasive in the case at bar as to proper utilization of discovery mechanics under the Ohio rule."

The Twelfth District noted that the *Boffa* court did not address the precise issue of whether Crim.R. 16(B) requires the discovery of oral statements which have not yet been reduced to written form. The *Boffa* court simply ordered the government to provide the requested discovery. The Twelfth District discussed *Boffa* as follows at 158, 16 OBR at 167–168, 474 N.E.2d at 1242:

"In *Boffa*, the court ordered the government to provide the individual defendants with the substance of any oral statements made by that defendant and intended for use as evidence by the government which were made during interrogation at any time to any person then known by the declarant defen-

dant to be a government agent or law enforcement officer. The *Boffa* court made no discussion of whether or not Crim.R. 16 limits discovery on behalf of the defendant to written summaries of oral statements that have been in existence prior to the discovery request; it simply ordered the government to provide the substance and information that the defendants sought through discovery."

The Twelfth District also followed a New York case, *People v. Utley* (1974), 77 Misc.2d 86, 353 N.Y.S.2d 301, where the court recognized a defendant has a constitutional right to the discovery of his oral statements. The Twelfth District discussed *Utley* and *Boffa* as follows at 158, 16 OBR at 168, 474 N.E.2d at 1243:

" * * * The *Utley* court recognized that insofar as discovery mechanisms enhance constitutional protections such as insuring voluntary confessions, there is no difference between permitting discovery of written statements versus oral statements, save a difference in form. Although the *Boffa* court failed to launch into a lengthy discussion of the relationship between liberal discovery of written and oral statements and the enhancement of constitutional rights as did the *Utley* court, the *Boffa* court's order reflects a similar underlying rationale. Broad liberal discovery contributes to the accurate determination of an accused's guilt or innocence. * * *"

Less than three months before the Twelfth District decided *Gooden,* the Ohio Supreme Court touched upon the issue in *State v. Parson* (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689. When deciding *Gooden,* the Twelfth District did not mention *Parson.* In *Parson,* the Ohio Supreme Court, without discussion, noted that an oral statement is properly discoverable despite the fact it may not have been reduced to a written summary prior to the demand for its disclosure. The court wrote at 445, 6 OBR at 487, 453 N.E.2d at 691:

"We agree with the appellant that the statement at issue was properly discoverable despite the fact that it was introduced as rebuttal evidence, * * * *and may not have been actually reduced to a written summary prior to the demand for its disclosure. United States v. Lewis* (C.A.D.C.1975), 511 F.2d 798." (Emphasis added.)

In *Lewis,* the court observed that the admission and exclusion of a statement does not turn on whether the statement was preserved "in written notes or in the memory of an officer." The *Lewis* court cautioned at 802:

" * * * Indeed, drawing such a distinction for the purpose of determining whether information was discoverable would only encourage investigators and prosecutors who sought the advantage of surprise at trial to avoid reducing

their recollections of a defendant's statements to writing, thus frustrating the purpose of [Federal] Rule 16(a)."

The Ohio Supreme Court has not considered the issue since *Parson.* Accordingly, we reject appellee's contention that appellant's oral statement, which had not been reduced to writing, was not discoverable under Crim.R. 16(B)(1)(a)(ii).

■ In the third and final argument under his first assignment of error, appellant contends the court erred by reopening the suppression hearing and permitting appellee to present an additional witness. The question of whether to accept additional evidence is within the sound discretion of the trial court. *Columbus v. Grant* (1981), 1 Ohio App.3d 96, 1. OBR 399, 439 N.E.2d 907. In *State v. Montgomery* (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167, 171, the court followed established law on what constitutes an abuse of discretion:

"The term 'abuse of discretion' 'connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.  * * *' *State v. Adams* (1980), 62 Ohio St.2d 151 [16 O.O.3d 169, 404 N.E.2d 144] * * *."

In the case *sub judice*, we find the court's decision to reopen the evidence was not unreasonable, arbitrary, or unconscionable. We note that at the time the court reopened the evidence, the court had not yet issued a judgment entry sustaining appellant's motion to suppress, and the court had not yet issued a final judgment in the case.

Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## II

■ In his second assignment of error, appellant asserts the appellee failed to provide the names of two key witnesses before the first day of trial. Appellant claims he was surprised when the state called William Lavey and Angela Lavey to the witness stand.

Appellee notes appellant failed to object to the testimony by the two witnesses and failed to request a Crim.R. 16 sanction against appellee for failing to provide the witnesses' names in a timely manner. We agree with appellee that appellant waived his right to assign the matter as error. In *State v. Williams* (1977), 51 Ohio St.2d 112, 117, 5 O.O.3d 98, 101, 364 N.E.2d 1364, 1367, the court wrote:

"This court has consistently held that an appellate court need not consider an error which a party complaining of the trial court's judgment could have

called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. \* \* \*"

We further note that prior to William Lavey's testimony, appellant's counsel requested a recess in order to interview the witness. The trial judge granted appellant's request. The record also indicates that appellant's counsel interviewed both of the witnesses in question prior to the trial. The interviews took place at appellant's counsel's office. Last, we note that during cross-examination appellant's counsel impeached the witnesses' testimony with the aid of the statements elicited during the pretrial interview.

Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

## III

In his third assignment of error, appellant asserts the court erred by denying his motions for mistrial. Appellant first moved for a mistrial after a witness testified that he had previously visited appellant's residence for the purpose of purchasing cocaine. Appellant contends the court's curative instruction did not cure the prejudicial effect of that testimony.

Appellant later moved for a mistrial after a detective gave testimony implying that the motorcycle was stolen. Appellant did not request the court to give a curative instruction after this motion.

In *State v. Glover* (1988), 35 Ohio St.3d 18, 517 N.E.2d 900, the court discussed how an appellate court should review an assignment of error concerning a motion for mistrial. The court wrote:

"In evaluating whether the declaration of a mistrial was proper in a particular case, this court has declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise. \* \* \* *This court has instead adopted an approach which grants great deference to the trial court's discretion* in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." (Emphasis added.)

In the case at bar, we find no abuse of discretion with the trial court's decisions denying appellant's motions for mistrial. The trial court's decisions were not unreasonable, arbitrary, or unconscionable. See *Montgomery, supra; Adams, supra.*

Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

### IV, V, VI, & VII

■ In the four assignments of error appellant raises in his *pro se* brief, he contends appellee coerced William Lavey and Angie Lavey into giving perjured testimony. In support of his contention, appellant attaches affidavits by the Laveys stating they perjured themselves at trial. Appellant admits the evidence supporting his contention is outside the record, but he asks us to issue a ruling stating that a post-conviction relief proceeding is the proper forum for the resolution of these assignments of error.

We agree with appellant that the affidavits are outside the record transmitted on appeal. App.R. 9(A) limits our consideration to "original papers and exhibits thereto *filed* in the trial court * * *." Consequently, we cannot consider the affidavits.

Further, we cannot grant appellant's request to state that the proper forum for the issues raised in this assignment of error is a post-conviction relief proceeding. It is fundamental that appellate courts do not indulge in advisory opinions. See *Armco, Inc. v. Pub. Util. Comm.* (1982), 69 Ohio St.2d 401, 23 O.O.3d 361, 433 N.E.2d 923; *State v. Bistricky* (1990), 66 Ohio App.3d 395, 584 N.E.2d 75.

Accordingly, based upon the foregoing reasons, we overrule appellant's fourth, fifth, sixth, and seventh assignments of error.

*Judgment affirmed.*

HARSHA, J., concurs.

GREY, J., dissents.

GREY, Judge, dissenting.

I respectfully dissent on the issue of the *Miranda* rights. I believe the majority opinion misconstrues the application of *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, to the facts here.

It is well established that before the state can get a defendant's statement into evidence, it must *prove* he was advised of his *Miranda* rights. There is no proof of that in this case. The majority opinion holds that this is an issue of credibility, not proof.

To say the credibility of any witness is for the trial court means that a court may believe or disbelieve whatever the witness has to say. However much a trial court believes the witness, the reviewing court cannot interfere or substitute its opinion for that of the trial court, *Awan, supra; Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Deference to the trial court on the issue of credibility, however, means that

this court must still review the testimony after giving it the same degree of reliability as the trial court did.

The highest degree of credibility the trial court could have possibly given to Officer Donini's testimony is that everything he said was absolutely true. Assuming the truth of everything he said, this court must nonetheless look at what he said to see if the state met its burden of proof.

Here is what Officer Donini said on direct examination:

"Q. When you went in, did you or anybody else upon going in to the house and seeing the occupants, including the defendant, give him their *Miranda* warnings?

"A. Someone did. I can't—I cannot tell you that I did, and I cannot tell you that I didn't. I don't have any written notation as to giving them to him, but I recall someone reading those to him, and I remember certain things that happened during the rights being read.

"Q. Okay.

"A. Such as, the defendant was on my far right of the fireplace. An officer—the defendant said something or looked around or something of that sort. One of the officers grabbed ahold of either the back of his head or his cuffs and yanked and said, 'Listen to the man,' and then I remember Lieutenant Blair motioning something to the defendant about go on ahead and look for it.

"Q. And during that time someone—was someone reading him his *Miranda* warnings?

"A. From what I recall, yes. Now, I have a tendency to believe that I was the one that read them, but I can't say a hundred percent sure."

Here is what he said on cross examination:

"Q. Lieutenant Donini, if I understand your testimony here today, you cannot recall specifically who read the *Miranda* warning; is that correct?

"A. That is correct.

"Q. And if I also interpret what you are telling me as being correct, it is your impression though that they were read?

"A. Yes, sir."

The state had the burden of proving that Callihan had been advised of his rights by a preponderance of the evidence. If Sheriff Hull thought that Deputy Meixner advised Callihan, but Meixner said he did not and doesn't know who did, then the court can only find that they don't know. The court had to rely on the testimony of Donini.

But the trial court could only be as certain as Donini was. The court cannot invest Donini's testimony with more credibility than Donini himself gives it.

Thus if Donini testifies that "I cannot tell you I did, and I cannot tell you I didn't," then the trial court must find that it cannot say that the defendant was advised of his rights and it cannot say he wasn't. If Donini testifies that he "cannot recall specifically who read the *Miranda* warnings," then the trial court cannot find that Donini read the *Miranda* warnings. If Donini only has an impression that Callihan was read his rights, then the court can have only an impression that he was.

The impression that somebody, perhaps Donini, advised the defendant of his *Miranda* rights is not proof by a preponderance of the evidence that he was advised of his rights. Preponderance is the standard. *Lego v. Twomey* (1972), 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618.

I would sustain the assignment of error and reverse, and so I dissent.