OPINION
Defendant-appellant, James L. Reed, appeals his conviction in the Clermont County Court of Common Pleas for driving while under the influence of alcohol ("DUI") in violation of R.C.4511.19(A)(1). The trial court's decision is affirmed.
Appellant was arrested for DUI on May 13, 1999. Appellant subsequently filed a "Motion to Dismiss and Suppress." After a hearing, the trial court overruled appellant's motion. The case was tried to a jury and appellant was found guilty of DUI, a felony of the fourth degree. The trial court sentenced appellant to eighteen months in the Ohio State Penal System, fined him $750, and permanently revoked his driver's license. Appellant appeals, raising two assignments of error for our consideration.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN FAILING TO SUSTAIN APPELLANT'S MOTION TO SUPPRESS.
In his first assignment of error, appellant contends that the trial court improperly denied his motion to suppress. Appellant insists that the sheriff's deputy who detained him lacked reasonable, articulable suspicion that appellant had committed the crime of DUI because (1) an informant's tip regarding appellant and provided to the deputy was not reliable, and (2) the sheriff's deputy never observed appellant operate a vehicle.
When considering a motion to suppress, the trial court is the primary judge of the credibility of witnesses and the weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19, 20. If the trial court's findings are supported by competent and credible evidence, then the appellate court must accept them. State v.Williams (1993), 86 Ohio App.3d 37, 41. Relying on the trial court's factual findings, the reviewing appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson
(1995), 100 Ohio App.3d 688, 691.
Deputy Mark Scranton of the Clermont County Sheriff's Department testified at the motion to suppress hearing. He stated that on May 13, 1999, he and Deputy Stratton were at the Pill Box Pharmacy when a female passerby told them that they "needed to hurry down" to the Dairy Mart. She said that she had seen "an extremely intoxicated male * * * getting out of his truck and staggering into the store and bumping things in the store." The woman also mentioned that "he got out of a white pickup truck with a wheelbarrow in the back."
Deputy Scranton drove to Dairy Mart and saw a truck that matched the description that the woman had given. He saw appellant sitting in the driver's seat behind the wheel. Deputy Scranton walked up to the side of the truck. Appellant had a bag of potato chips in his left hand, a Mountain Dew drink between his legs, and "had his right hand on the ignition." The keys were in the ignition, but the engine was not running.
Deputy Scranton knew appellant and had seen him before in a sober state. Deputy Scranton detected a strong odor of alcoholic beverage, noted that appellant was slurring his speech, and saw that appellant's eyes were glassy and bloodshot. Deputy Scranton asked appellant to exit the vehicle to perform field tests. Appellant refused to take any test. Appellant said, "You know I'm drunk." There were no other passengers in the truck or persons around the truck.
Although a more detailed description of Deputy Scranton's encounter with appellant was recounted at trial, the above is a comprehensive review of the evidence at the suppression hearing. Appellant urges us to consider additional evidence that was introduced at trial in our review of his first assignment of error. However, we find that in reviewing whether the trial court erred by overruling the motion to suppress, it is not proper to consider evidence that was not before the trial court when it ruled on this motion. Based upon the evidence presented at the suppression hearing, we will consider appellant's arguments that the deputy lacked reasonable, articulable suspicion necessary to detain appellant.
Fourth Amendment rights of citizens impose a standard of reasonableness upon government officials' exercise of discretion.City of Maumee v. Weisner (1999), 87 Ohio St.3d 295, 299, citingDelaware v. Prouse (1979), 440 U.S. 648, 653-54, 99 S.Ct. 1391,1396. "Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Weisner at 299, quoting Prouse at 654,99 S.Ct. at 1396.
When a law enforcement officer conducts an investigative detention of an individual based upon a suspicion that the individual has engaged in criminal activity, an investigatory stop occurs. For such a stop to be constitutional, the officer must be able to give articulable facts that served as the basis for his reasonable suspicion of criminal behavior. Terry v. Ohio (1968),392 U.S. 1, 21, 88 S.Ct. 1868; State v. Andrews (1991), 57 Ohio St.3d 86,87. "Reasonable suspicion" is a term that connotes something less than probable cause, but something more than an "inchoate and unparticularized suspicion or `hunch.'" Terry at 27, 88 S.Ct. at 1883. The existence of reasonable suspicion must be considered in light of the totality of the circumstances.State v. Freeman (1980), 64 Ohio St.2d 291, 295, certiorari denied (1981), 454 U.S. 822, 102 S.Ct. 107.
The Fourth Amendment is not implicated in all personal encounters between law enforcement officials and citizens, and in particular the case of a consensual encounter. Florida v. Bostick
(1991), 501 U.S. 429, 434, 111 S.Ct. 2382, 2386. A law enforcement officer does not need reasonable suspicion merely to approach an individual to make reasonable inquiries. See Bostick
at 434, 111 S.Ct. 2382, 2386; State v. King (Aug. 23 1999), Clermont App. No. CA98-12-123, unreported.
Keeping these legal precepts in mind, we turn to the evidence presented at the suppression hearing. Deputy Scranton was alerted to possible criminal activity by a passerby and went to the Diary Mart to investigate. The question before us is when did the deputy conduct an investigatory stop, and whether he had reasonable, articulable suspicion at the time of such a stop.
There was testimony that Deputy Scranton knew appellant. Appellant was sitting in his truck at the Dairy Mart parking lot, and the engine was not running. According to the testimony at the suppression hearing, Deputy Scranton simply walked up to the side of appellant's truck. This does not constitute a "stop" of appellant. See State v. Boys (1998), 128 Ohio App.3d 640, 642
(finding that a police officer's approach and questioning of occupants in a parked vehicle did not constitute a seizure and therefore did not require reasonable, articulable suspicion of criminal wrongdoing). Then Deputy Scranton detected a strong odor of alcoholic beverage, noted that appellant was slurring his speech, and saw that appellant's eyes were glassy and bloodshot. Deputy Scranton also observed appellant sitting in the driver's seat with his right hand on the ignition and the keys in the ignition. At that point, Deputy Scranton formed a reasonable suspicion that appellant was intoxicated and had committed a crime. This justified the deputy's request that appellant exit the vehicle to perform field tests. Appellant refused to take any test. He incriminated himself by admitting that he was drunk. Reviewing the facts as they were presented at the suppression hearing, it appears that Deputy Scranton did not detain appellant until after he had detected several signs indicating that appellant had been drinking alcohol. Thereafter, Deputy Scranton had reasonable suspicion to detain appellant for further investigation.
Appellant also argues that the detention was not appropriate because Deputy Scranton had not observed appellant operate the vehicle. We disagree.
"A clear purpose of R.C. 4511.19 is to discourage persons from putting themselves in the position in which they can potentially cause the movement of a motor vehicle while intoxicated or under the influence of any drug of abuse." State v. Gill (1994),70 Ohio St.3d 150, 154. A person who is in the driver's seat of a motor vehicle with the ignition key in the ignition and who has a prohibited concentration of alcohol in his or her body is "operating" the vehicle within the meaning of R.C. 4511.19, regardless of whether the engine of the vehicle is running. Id.
at syllabus. In Gill, the supreme court determined that Gill was properly convicted of DUI, even though he was asleep in the driver's seat when the police officers found him. Id. at 154.
In the case sub judice, Deputy Scranton observed that appellant's hand was on the ignition and a key was in the ignition. Appellant displayed several signs of alcohol intoxication and admitted that he was drunk. Therefore, there was evidence that appellant was "operating" the vehicle within the meaning of the DUI statute, and the evidence obtained during appellant's detention should not be suppressed. The first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN CONVICTING THE APPELLANT BECAUSE HIS CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED.
In his second assignment of error, appellant asserts that his conviction was against the manifest weight of the evidence.
The standard for considering whether a conviction is against the manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony.Thompkins at 389. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
Appellant's brief also appears to argue that there was insufficient evidence to sustain his DUI conviction. The standard of review of a claim of insufficient evidence was established inState v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)
Implicit to appellant's manifest weight and sufficiency challenges to the evidence are his objections to the evidence as made in his motion to suppress. A motion to suppress, timely made and argued at pretrial, serves as a timely objection to the evidence in question when it is introduced into evidence at trial. See State v. Callihan (1992), 80 Ohio App.3d 184,190. In the case sub judice, a more detailed description of appellant's detention was provided at trial than was provided at the motion to suppress hearing. Therefore, we must again review appellant's encounter with law enforcement in light of the more complete testimony.
At trial, Deputy Scranton testified concerning the stop that he was approached by a woman who said that there was a man at a nearby Dairy Mart who was "extremely intoxicated." Evidence not adduced at the suppression hearing but presented at trial included the fact that Deputy Stratton accompanied Deputy Scranton on his trip to the Dairy Mart, and that when they arrived, Deputy Stratton, who had driven separately, parked his patrol car behind appellant's truck at an angle. From the trial testimony, it was not clear whether the deputy's car was blocking appellant's truck. However, this court has previously found that a deputy's act of parking his vehicle behind and perpendicular to a citizen's vehicle does not, in and of itself, transform a consensual encounter between law enforcement and a citizen into an investigatory stop. See State v. King (Aug. 23, 1999), Clermont App. No. CA98-12-123, unreported.
Even if, under the facts adduced at trial, Deputy Scranton and Deputy Stratton's initial approach to appellant was an investigatory stop, the evidence supports a finding that the stop was based on reasonable, articulable suspicion generated from a citizen-informant's tip. "[A]n investigatory stop may be justified even though the criminal activity was not first observed by a police officer, but, rather, by a citizen who then relayed the information to the police in the form of a `tip.'" State v.Ramey (1998), 129 Ohio App.3d 409, 416. In evaluating the value of an informant's tip as justification for an investigatory stop, a court is to consider the informant's veracity, reliability, and basis of knowledge. City of Maumee v. Weisner (1999), 87 Ohio St.3d 295,299, citing Alabama v. White (1990), 496 U.S. 325, 328,110 S.Ct. 2412, 2415.
A tip from a citizen-informant, who identifies herself to law enforcement and clearly reports what she has just witnessed as a passerby is presumptively reliable. See Ramey at 416-17. The fact that a record may not identify a passerby by name does not make that person "anonymous." Id. at 416. "There is nothing even remotely anonymous, clandestine, or surreptitious about a citizen stopping a police officer on the street to report criminal activity." Id.
In this case, a passerby's tip informed Deputy Scranton of criminal activity that she had recently witnessed. At trial, Deputy Scranton testified that the woman passerby stated that there was "an extremely intoxicated male who was at Dairy Mart who was getting ready to leave the store." The woman said that the man was "in a white pickup truck which had a wheelbarrow in the bed of the truck." This description suggested that appellant had committed the crimes of public intoxication and/or DUI. The woman's description of "a white pickup truck with a wheelbarrow in the back," was sufficiently particularized for the deputy to distinguish this vehicle from other vehicles at the Diary Mart. Therefore, we find that Deputy Scranton had reasonable, articulable suspicion at the time he approached appellant at the Diary Mart.
Appellant was convicted of R.C. 4511.19(A)(1), a felony of the fourth degree. This statutory section provides that "[n]o person shall operate any vehicle * * * within this state, if any of the following apply: (1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse." R.C.4511.19(A)(1). Appellant was convicted of a fourth degree felony, as provided for by R.C. 4511.99(A)(4)(a), which states in part that:
 If, within six years of the offense, the offender has been convicted of or pleaded guilty to three or more violations of division (A) or (B) of section 4511.19 of the Revised Code * * *, or if the offender previously has been convicted of or pleaded guilty to a violation of division (A) of section 4511.19 of the Revised Code under circumstances in which the violation was a felony and regardless of when the violation and the conviction or guilty plea occurred, the offender is guilty of a felony of the fourth degree.
The observations of Deputy Scranton show that there was evidence demonstrating that appellant was under the influence of alcohol. Deputy Scranton detected an odor of alcohol about appellant's person. Appellant's face was flushed, his eyes were glassy and bloodshot, and his speech was slurred. Appellant stated, "Why are you doing this to me? I'm just trying to get home. I only have a short way to go." When appellant exited his truck, he had to lean against it to balance himself. When asked to perform field sobriety tests, appellant refused and said, "You know I'm drunk." As discussed in the first assignment of error, appellant was "operating" a vehicle under the DUI statute. The prosecution also presented evidence demonstrating that appellant had committed three DUI offenses within the past six years and that two of these offenses were felony DUI violations.
We acknowledge that appellant presented a viable defense at trial by testifying himself and presenting testimony from his friend Robert Massman. Massman testified that he, not appellant, had driven the truck that day. However, a reasonable mind could have chosen not to believe this defense.
Reviewing the entire record and weighing the evidence and the reasonable inferences, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed as against the manifest weight of the evidence. Moreover, reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the elements of DUI were proven beyond a reasonable doubt. Therefore, we also find that the record contains sufficient evidence to support appellant's conviction. The second assignment of error is overruled.
Judgment affirmed.
 __________________________ VALEN, J.
POWELL, P.J., and WALSH, J., concur.